THE STATE v. ALBERT GREGORI, Appellant.—2 S. W. (2d) 747.

Court en Banc, February 4, 1928.

*Verne Lacy* for appellant.

*North T. Gentry*, Attorney-General, and *W. F. Frank*, Assistant Attorney-General, for respondent.

DAVIS, C.—Defendant was charged in an indictment filed in the Circuit Court of the City of St. Louis, Missouri, with murder in the first degree. On ascertaining that he was a minor of the age of seventeen years, the cause was transferred to the juvenile division of said circuit court, where he was tried and, on November 19, 1925, convicted of first degree murder for killing one Robert E. Woody. The sentence was life imprisonment.

Without the benefit of a bill of exceptions, for the record does not contain such, we are necessarily confined to a consideration of the record proper, charged with the duty of examining it, however, to determine whether defendant has been fairly tried. The record proper shows that on the 17th day of November, 1925, the defendant was arraigned and entered a plea of not guilty; that thereafter on the same day he was put upon his trial before a jury, duly empaneled, charged and sworn to try the cause, which jury on November 19, 1925, returned into court the verdict; that thereafter defendant filed his motion for a new trial, which the trial court in due course overruled, and thereafter allocution was had and judgment and sentence pronounced in accordance with the verdict, from which an appeal was duly taken to this court.

1000

I. The record advises us that defendant was indicted by the grand jurors in the Circuit Court of the City of St. Louis for murder in the first degree. The circuit court, upon ascertaining that defendant was seventeen and under the age of eighteen years, transferred the cause to the Juvenile Court of the City of St. Louis for trial, where he was later convicted of murder in the first degree and sentenced to the penitentiary for life.

The determinative question on the record and the statutes then arises relative to the jurisdiction of the juvenile court over a minor seventeen and under the age of eighteen years in counties of fifty thousand population or more.

Before the Legislature amended Chapter 21, Article 6, of the Revised Statutes of 1919, both Chapter 21, Article 6, comprising Section 2591 et seq. apposite to counties of fifty thousand population or more, and Chapter 11, Article 5, comprising Section 1134 et seq. apposite to counties of less than fifty thousand population, treated of neglected and delinquent children under the age of seventeen years. Chapter 21, Article 6, relative to counties of fifty thousand population or more, was amended as shown by the Laws of 1923, page 153, by striking out the word "seventeen" and inserting in lieu thereof the word "eighteen," thereby attempting to render the Juvenile Court Act, relative to counties of fifty thousand population or more, applicable to every child under the age of eighteen years. However, we are unable to find any amendment in that regard as to Chapter 11, Article 5. This situation then obtains: That in counties of fifty thousand population or more children seventeen years of age are subject to the Juvenile Court Act, while in counties of less than fifty thousand population children seventeen years of age are not subject to the Juvenile Court Act, and are subject to criminal responsibility.

We then have legislation in this State which does not apply equally to inhabitants of every section. In 12 Corpus Juris, page 1186, it is said:

"Legislation is void as contravening the equal protection guaranty which makes an act a crime when committed by one person, but not so when committed by another in like situation, or which makes the question as to whether a certain act is criminal or not depend on an arbitrary or unreasonable distinction between persons or classes of persons committing it."

The above work cites American Sugar Co. v. McFarland, 229 Fed. 284, affirmed in McFarland v. American Sugar Refining Co., 241 U. S. 79, and Budd v. State, 3 Humph. 483, 39 Am. Dec. 189, as well as other authorities, in support of the rule.

In Budd v. State, supra, it was held that the indictment was founded upon a section of an act to charter the Union Bank of the State

of Tennessee, which provided that any officers of the bank who appropriated the funds of the bank to their own use were guilty of a felony. The court held that this section was in violation of the law of the land, because the officers of the bank were the only persons in the State comprehended or affected by the act imposing criminal liability.

By a reference to Section 1136, applicable to counties of less than fifty thousand population, we find that, in the discretion of the judge of the circuit court, any petition alleging a child to be delinquent may be dismissed and such child prosecuted under the general law when in the judgment of such judge such child is not a proper subject to be dealt with under the reformatory provision of Chapter 11, Article 5, while a reference to Chapter 21, Article 6, advises us that no such provision obtains. Therefore, according to said articles any child in counties of less than fifty thousand people in pursuance to the discretion of the judge of the circuit court may be prosecuted under the general criminal law, while in counties of fifty thousand population or more, the circuit court may not in its discretion dismiss the petition for delinquency and proceed to trial under the general criminal laws of the State.

It is then seen that the laws of this State are not uniformly applicable. It is the general doctrine that the law, relative to those who may be charged and convicted of crime, as well as the punishment to be inflicted therefor, shall operate equally upon every citizen or inhabitant of the State.

Ex parte Jilz, 64 Mo. 205, with respect to what is now Article 2, Section 30, of our Constitution, that no person shall be deprived of life, liberty or property without due process of law, declares that a law prescribing a punishment in one county different from that prescribed by a general law for the remainder of the State violates this section of the Constitution. In State v. Buchardt, 144 Mo. 83, it is held that it is not permissible under our Constitution to punish the same offense or violation of some public or general law by one species of punishment in one locality and by a different or more heavy punishment in other localities in this State. A law inflicting such different penalties for the perpetration of any given crime cannot bear the test of judicial examination. The Court say in In re Lorkowski, 94 Mo. App. 623: "A child under sixteen years of age might be convicted for scribbling his name on the walls of the courthouse in the city of St. Louis and be committed to the house of refuge and kept there until he became twenty-one years of age; when for a like thoughtless act by a country child of the same age, his punishment would be a fine of one dollar or probably one cent (Sec. 1975, R. S. 1919). Such unequal punishment is not to be thought of, and the act which seemingly authorizes it must yield to

the provisions of the general law as expressed in Section 2381, and we hold that so much of Section 6 of Article 21 as prohibits the court of criminal correction from committing a person, convicted of a misdemeanor in that court, to the house of refuge for a definite term, is by implication repealed by Section 2381.''

We also find this doctrine upheld in In re Jilz, 3 Mo. App. 243, where it is said: ''A law which should prescribe death as the punishment for murder in one county, and imprisonment as the penalty for the same crime in other parts of the State, would be void, because not operating equally upon all inhabitants of the State.''

We cite with approval the well considered case of In re Mallon, 16 Idaho, 737, 102 Pac. 374, 22 L. R. A. (N. S.) 1123. The statute there provided every prisoner confined in the State Prison for a term less than for life who escapes therefrom is punishable by imprisonment in the State Prison for a term equal in length to the term he was serving at the time of such escape; said second term of imprisonment to commence from the time he would otherwise have been discharged from said prison. In regard thereto the Court say: ''We think it may be stated as a general proposition of law that every person is entitled to the equal protection of the law, and that equal protection of the law means that equal protection and security should be given to all under like circumstances in his life, his liberty and his property and in the pursuit of happiness, and in the exemption from any greater burden and charge than are equally imposed upon all others under like circumstances. . . . Under this statute there would be as many different grades of crime as there are prisoners undergoing different sentences. . . . To say that a long-term convict commits a greater offense than the short-term convict is to base the punishment for such escape not upon the act of escaping from a state prison, but upon the act of escaping from the punishment fixed by a court in the judgment of conviction.''

We think it is evident that different acts, both relating, however, to the treatment of delinquent children, one of which provides that a child in one part of the State shall be guilty of a crime and the other that he shall be subject in another part of the State to the Juvenile Court Act, deny equal protection of the law to persons coming within their scope, and that the amendments to Chapter 21, Article 6, Laws of 1923, page 153, are unconstitutional. The question is not properly before us and we think it is unnecessary to decide whether the juvenile court acts render a child under the age of seventeen years *doli incapax*, that is, incapable of having knowledge of right and wrong and of committing a crime.

II. Having ruled that the amendments to Chapter 21, Article 6, found in Laws 1923, page 153 *el sequa.*, are unconstitutional and void, the question of the right of the Circuit Court of the City of St. Louis to transfer the cause to the Juvenile Court naturally arises.

We find the record in one place speaks of the cause as filed in the office of the Clerk of the Circuit Court, City of St. Louis (Juvenile Division of said circuit court). In another we find an order of the circuit court as follows: "It is therefore ordered by the court that said indictment be certified and transmitted to the Juvenile Court of the City of St. Louis for trial, or such other disposition as may be necessary and proper in the premises." The warrant for the arrest of defendant is headed "Juvenile Court, Children's Building, 1321 Clark Ave. (A Division of the Circuit Court of the City of St. Louis) (Warrant)," the warrant reciting: "You are hereby authorized to take forthwith into your charge and care Albert Gregori, aged 17 years, and convey him to the Juvenile Court."

Section 2592, Revised Statutes 1919, provides that circuit courts exercising jurisdiction shall have original jurisdiction of all cases coming within the terms of this article. Said section further provides for juvenile court room and juvenile records, and states that the court may for convenience be called the juvenile court. Sections 2591, 2593, 2595, 2596, and nearly all the remaining sections of said article speak of it as the Juvenile Court. Suffice it to say, whether it is a division of the circuit court or a separate and distinct tribunal, it is contemplated that only children, subject to the provisions of the act, are to be cared for or proceeded against therein, for it is limited to children coming within its scope.

The Juvenile Court Act, so called, subjects to its jurisdiction only minors under a certain age. Jurisdiction over others beyond the age limit prescribed by the act is by implication denied. The question before us is not the right to try a child within the age limit in the Juvenile Court for crime, but the jurisdiction of the Juvenile Court, relative to a criminal charge, over another without the age limit. As we have ruled the Juvenile Court Act applies to children sixteen years of age and under, that is, under the age of seventeen years. As defendant was seventeen years of age, the Juvenile Court was without jurisdiction to try him. His status remained that of any other citizen, to be tried by the court having jurisdiction of criminal offenses. Section 2436, Revised Statutes 1919, provides: "The circuit court in the respective counties in which they may be held shall have power and jurisdiction as follows: First—as courts of law, in all criminal cases which shall not be otherwise provided for by law." We know of no enactment otherwise providing for a court to try a person, seventeen years of age, for murder in the first de-

gree. Defendant, seventeen years of age according to the record, was not subject to the jurisdiction of the Juvenile Court, and that court could not try him. The Circuit Court of the City of St. Louis alone had power and jurisdiction to compel him to answer a first degree murder charge against the State for an act committed within its jurisdiction.

The indictment by the grand jurors of the Circuit Court of the City of St. Louis and the return of the indictment to that court was regular. The transfer of the cause by the circuit court to the Juvenile Court was irregular and the defendant's trial there of no effect, as that court lacked jurisdiction. His position is that of never having had a trial. We therefore reverse and remand the cause to be tried in the Circuit Court of the City of St. Louis.

PER CURIAM:—This cause coming into Court en Banc, the foregoing opinion of Davis, C., in Division Two, is adopted as the opinion of the court. All concur.