Ronald Lee LONG, a minor by Lewis Daniel Long, his father and next friend, and James Brooks, Jr., a minor by Lillian Brooks, his mother and next friend, individually and on behalf of all other minor children similarly situated

and

Robert D. Neal, Intervenor,

v.

Honorable Jerome ROBINSON, Associate Judge, Municipal Court of Baltimore City and State of Maryland.

Civ. A. No. 20779.

United States District Court,
D. Maryland.

Aug. 6, 1970.

Joseph A. Matera, Acting Executive Director, for Ronald Lee Long.

David R. Packard, Law Reform Unit, Legal Services Program, for James Brooks, Jr.

Michael Millemann, Legal Education Director, Legal Aid Bureau, Incorporated, Baltimore, Md., and Kenneth Johnson, Executive Director, Lawyers' Committee for Civil Rights Under Law, Baltimore, Md., for original plaintiffs.

Edwin S. Villmoare and Peter Smith, Baltimore, Md., for intervening plaintiff Robert D. Neal.

Francis B. Burch, Atty. Gen. Alfred J. O'Ferrall, III, Asst. Atty. Gen., for the State of Maryland, Baltimore, Md., Charles P. Moylan, State's Atty., and Philip E. Epstein, Asst. State's Atty. for Baltimore City, Baltimore, Md., for defendants.

WATKINS, Chief Judge.

This is a suit brought by Ronald Lee Long (Long) and James Brooks, Jr. (Brooks) original plaintiffs, and by Robert D. Neal (Neal) intervening plaintiff (sometimes hereinafter collectively called "plaintiffs") by their respective next friends, purportedly pursuant to United States Code, Title 28, sections 1343(3), 2281 and 2284, Tit. 42, section 1983. Among other things the suit seeks to enjoin the enforcement of, and to have declared invalid, the provisions of Article 4, section 240(b) of the

Charter and Public Local Laws of Baltimore City setting a juvenile age limit of sixteen years, and that portion of Article 26, sections 51–71 of the Maryland Code of Public General Laws, excepting Baltimore City from the general statewide juvenile age limit of eighteen (18) years. Juvenile court jurisdiction over sixteen (16) and seventeen (17) year olds therefore exists in circuit courts in all areas of Maryland except Baltimore City. This discrepancy is alleged to contravene the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States.

The facts are not seriously in dispute, and in large part have (commendably) been stipulated as well as the applicable provisions of the Charter and Public Local Laws of the City of Baltimore, and of the Maryland Code of Public General Laws. The stipulation also recites the agreement that this action is an appropriate class action authorized by Rule 23(b) (2) of the Federal Rules of Civil Procedure and that the class which the plaintiffs represent are all persons similarly situated between the ages of sixteen (16) and eighteen (18), and who have been and/or may be charged and prosecuted as adults in Baltimore City for violations of criminal laws promulgated by the State of Maryland and the City of Baltimore and subject to possible fine and/or confinement as adults, and not entitled to be treated as juveniles, as said class would be treated outside of the City of Baltimore in the remaining counties of the State of Maryland.

It is further stipulated that the plaintiff Long is a Negro minor, born October 28, 1952, and a citizen of the United States and of the State of Maryland, residing in the City of Baltimore and subject to the jurisdiction of the courts of Maryland and of the City of Baltimore.

The said Long, then being a minor sixteen (16) years of age, was arrested on the night of February 11, 1969 and charged with violation of one of the provisions of the criminal code of the State of Maryland, namely Article 27, section 123, Annotated Code of Maryland, relating to the crime of drunkenness and disorderly conduct, in that the said Long had been charged with allegedly failing to obey the lawful command of a police officer.

The said Long is now and has been facing prosecution by the State of Maryland in the Municipal Court of Baltimore City, Criminal Division, for the alleged commission of the said offense, being in said court as an adult. A motion to dismiss on behalf of the plaintiff Long was denied on April 19, 1969, by the defendant, The Honorable Jerome Robinson; and because of the provisions of the state law here being challenged, the plaintiff Long is not entitled to be treated as a juvenile offender nor to be placed under the jurisdiction of the Juvenile Court.

The plaintiff, Brooks, a Negro, born March 16, 1952 and a citizen of the United States and of the State of Maryland, was a resident of Howard County, Maryland, living with his grandmother, where he attended school and worked on a part-time basis.

The said Brooks, then being a minor sixteen (16) years of age left his Harford County residence on the night of February 11, 1969, and was staying with his mother, Lillian Brooks, in Baltimore City because of a medical appointment in the city the next day. The plaintiff was arrested on the night of February 11, 1969 and charged with the commission of an offense in Baltimore City, namely Article 27, section 123, Annotated Code of Maryland, relating to the crime of drunkenness and disorderly conduct in Baltimore City for allegedly failing to obey the lawful command of a police officer.

The said Brooks, is now and has been facing prosecution by the State of Maryland in the Municipal Court of Baltimore City, Criminal Division, as an adult for the offense allegedly committed and his case is presently pending in said courts. A motion to dismiss, challenging the jurisdiction of said court

was denied on April 19, 1969, by the defendant, The Honorable Jerome Robinson; and because of the provisions of the state law being here challenged, plaintiff was not entitled to be treated as a juvenile offender, nor to be placed under the jurisdiction of the Juvenile Court.

The legislative history herein relevant shows that the Charter and Public Local Laws of Baltimore City, creating the Division of Juvenile Causes for the Circuit Court of Baltimore, defines a child as a person under the age of sixteen (16) years (Article 4, section 240 [b]); that the act conferring jurisdiction of Juvenile Causes on the Circuit Court of Baltimore City was passed by the Legislature in 1943, thereby abolishing the offices of Magistrate and Assistant Magistrate for Juvenile Causes in Baltimore City, Laws of Maryland 1943, Chapter 118; that the said act did not alter the juvenile age limit of sixteen (16) years which applied to persons in Baltimore City since 1902; that in 1945, the Legislature by public general law, Laws of Maryland, 1945, Chapter 797, section 48(c), fixed the juvenile age limit at eighteen (18) years in conferring jurisdiction of Juvenile Causes in Circuit Courts of the counties of the state; that the said public general law, when enacted in 1945, did not apply to Baltimore City, Alleghany County, Montgomery County and Washington County; that the exceptions established for Alleghany County, Montgomery County and Washington County have since been eliminated and that the juvenile age limit in each of these counties is eighteen (18) years; that at the present time, the statute codified in the Juvenile Court Act, Article 26, sections 51–71 (Code 1957 Edition, 1966 Replacement Volume), applies to all counties except Montgomery County where the age limit for juveniles is already eighteen (18) years.

Article 26 would have applied to Baltimore City as of July 1, 1969, under the 1966 amendment to the Act, but the Legislature postponed the effective date of the amendment until July 1, 1970 (S. B. 27, signed by Governor Marvin Mandel on May 2, 1969).

The effective date of the amendment was further postponed until July 1, 1971 (H.B. 940).

The exception in Article 26 therefore exists only for Baltimore City, where the juvenile age limit remains sixteen (16), whereas it is eighteen (18) in all of the counties of the State of Maryland.

But for the exception contained in Article 26, section 70–1(c), the plaintiffs and the class they represent would be entitled to be treated as juveniles in the City of Baltimore for the alleged offense for which they have been and are presently facing prosecution in the City of Baltimore, as aforesaid. Conviction in Municipal Court could subject the plaintiffs and the class they represent to a criminal record and possible incarceration in an adult institution, whereas a finding of delinquency in Juvenile Court would not involve either of these possibilities.

The intervening plaintiff Neal alleges that on February 12, 1970 he was arrested and charged with receiving stolen goods. When his case came on for trial in the Municipal Court of Baltimore City on February 25, 1970, counsel moved to dismiss for lack of jurisdiction on the ground that the Juvenile Causes Act requiring that persons aged sixteen and seventeen committing criminal offenses in Baltimore City be tried as adults is unconstitutional. In the alternative, counsel for Neal argued that prosecution should be delayed until decision in this case. The Municipal Court denied the motion to dismiss, but has postponed trial until the disposition of this case. Neal's specific point is that he "became sixteen years only five weeks before his arrest. Prior to that arrest, he had never been arrested or charged for any offense, nor had he ever been subject to the jurisdiction of the Juvenile Court * * *"

Just what the intervenor adds to the legal questions involved is not apparent.

He testified that he found a transit card and "started filling the card out" when a teacher approached him; the card was turned in by him to a teacher, and two or three weeks later he was arrested on a warrant, and he was locked up in Central Police Station for two nights when he was released to the custody of his mother. His testimony was offered because plaintiff's counsel "did want the Court just to have the opportunity to observe a 16 year old." (Transcript of hearing April 24 and 27, 1970—hereinafter Tr.—131). Leave to intervene was granted in the absence of objection.

■ Plaintiffs requested the convening of a three-judge court, and this was done. A motion to dismiss was filed by defendants, which was elaborately briefed by both sides. In the course of preparation for the hearing, the undersigned became convinced that the case was not a proper one for a three-judge court. The attacked provision of the Code of Public Local Laws of Baltimore City is inevitably local. The only portion of the Maryland Code of Public General Laws, Article 26, section 70–1(c), attacked, reads as follows:

> " *'Child'* means a person who has not reached his 18th birthday, except in Baltimore City, where, until July 1, 1970, 'child' means a person who has not reached his 16th birthday." [1]

The exception in section 70–1(c) is purely local, and is not of state-wide application; and the prayers for relief seek injunctions against local officials only. The situation would seem clearly to fall within the reason and language of Moody v. Flowers, 1967, 387 U.S. 97, 101–103, 87 S.Ct. 1544, 18 L.Ed.2d 643. The request by the undersigned for the convocation of a three-judge court was improvidently made. All parties to the case have agreed that it should be heard by a single judge, and that they will not

hereafter contend that the subject matter is one for a three-judge court.

Defendants' motion to dismiss was denied, and the case was heard on the merits, with two days of testimony; and further briefs were filed.

There thus have been, and until July 1, 1971 will be,[2] two classes of sixteen and seventeen year olds; those who reside outside of Baltimore City and/or who although residing in Baltimore City are not arrested within city limits; and those who whether or not residing within the limits of Baltimore City are arrested therein. It is thus the place of arrest, rather than place of residence, which is critical.

■■ There can be no question but that distinctions based on county areas are not necessarily so unreasonable as to constitute a denial of equal protection; and that the Equal Protection Clause relates to equality between persons as such rather than between areas. Salsburg v. Maryland, 1954, 346 U.S. 544–545, 74 S. Ct. 280, 98 L.Ed. 281; and that "The presumption of reasonableness is with the State", ibid. 553, 74 S.Ct. 284, footnote 9 reading:

> "9 '* * * It is * * * a maxim of constitutional law that a legislature is presumed to have acted within constitutional limits, upon full knowledge of the facts, and with the purpose of promoting the interests of the people as a whole, and courts will not lightly hold that an act duly passed by the legislature was one in the enactment of which it has transcended its power.' Atchison, T. & S. F. R. Co. v. Matthews, 174 U.S. 96, 104, 19 S.Ct. 609, 612, 43 L.Ed. 909. 'A statutory discrimination will not be set aside as the denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it.' Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 584, 55 S.Ct.

---

1. Section 70–26 is the usual severability provision.

2. Unless further extended by the Legislature, which seems to have formed a habit; or unless shortened by a declaration of invalidity.

538, 540, 79 L.Ed. 1070. See also, Middleton v. Texas Power & Light Co., 249 U.S. 152, 157–158, 39 S.Ct. 227, 228–229, 63 L.Ed. 527; Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 340–341, 55 L.Ed. 369." (McGowan v. Maryland, 1961, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393).

The presumption exists, however, only in the absence of evidence to the contrary; such evidence is clearly admissible. Salsburg, 346 U.S. at 553, 74 S.Ct. 280; McGowan, 366 U.S. at 426, 81 S. Ct. 1101.

■ Hence, while it must be assumed that there was reasonable ground for the Legislature in 1902 to fix the age of juveniles at under sixteen, and while there may be good grounds for fixing the juvenile age at sixteen state-wide,[3] the evidence, intrinsic and extrinsic, is that there is no justification for a differentiation in age between the City and the Counties.[4] Briefly, the proposed repeals of the exemption of Baltimore City from the otherwise State-wide provision are recognition that the original justification, if there were one, either no longer existed, or was ceasing, and that a phaseout was proposed. Further the testimony on behalf of plaintiffs and defendants clearly showed there was no real distinction between sixteen and seventeen year old residents of Baltimore City and the Counties. The place of arrest, rather than the inherent or acquired characteristics of the offenders, is purely fortuitous, but determinative.

If not the starting point, certainly the focal point for any consideration of the problems of the Juvenile Courts gener-

ally, and the lack of justification for any but a state-wide uniform classification of juveniles, is the Report of the Legislative Council Special Committee on Juvenile Courts, January 1966 usually referred to as the Report of the Rasin Committee. (Joint Exhibit 1).[5]

The unanimous conclusion favored uniform age through seventeen throughout the State. The reasons are convincingly stated on pages 6–11, and are fully supported by the testimony in this case.

The Rasin Committee Report was unquestionably the foundation for the 1966 legislation, outlined above.

The Rasin Committee found (p. 7) that if there were disparity between city children and children in the counties in the past, "there is little evidence that those differences exist today. If differentiation of individuals is necessary, as it surely is, it should be made on the basis of facts about the individual, and not on the basis of an assumption about a huge and diverse group such as the youthful population of a city. Whatever differentiation is needed may be made by a court, either by the device of a waiver to the adult criminal court, or by the nature of the disposition following an adjudication of delinquency. The patent unfairness and unjustified inequality which results from the present disparity undermines a basic value of our legal system. * * *"

The testimony in this case fully supports the conclusion that there is no psychological or physical basis for distinguishing between sixteen and seventeen year olds residing in Baltimore City and in the Counties. Such is the testimony of Robert C. Hilson, Director of the

3. See state of flux on statewide ages in "Oyez, Oyez," Bulletin of the Section of Judicial Administration of the American Bar Association, Vol. 13, No. 1, p. 2; and the new District of Columbia Crime Bill.

4. It thus becomes unnecessary to consider whether this case involves civil rights, as to which the Supreme Court has become "extremely sensitive", Levy v. Louisiana, 1968, 391 U.S. 68, 71, 88 S.Ct. 1509, 20

L.Ed.2d 436, and as to which "strict scrutiny of the classification * * * is essential." Skinner v. Oklahoma, 1942, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655.

5. The Committee contained one representative of the Baltimore City Juvenile system. Members of the Baltimore City Municipal Court and the Youth Court of the Criminal Court of Baltimore City were consulted.

State Department of Juvenile Services, after working with City and County children for a number of years (Tr. 10, 11); of Dr. John Hamilton, a licensed medical doctor, practicing psychiatrist, and Director of Clifton T. Perkins State Hospital (Tr. 45–59—who also testified that City children on the whole were less mature than County children, and required more intensive services and attention); James V. Bennett, Director of the Federal Bureau of Prisons for twenty-seven years, and formerly in charge of the National Training School for Boys in Washington, D.C. (Tr. 142); and Judge Joseph Howard, a member of the Supreme Bench of Baltimore City, and a former probation officer and social caseworker (Tr. 206).[6]

Whatever may have been the original justification for the exclusion of sixteen and seventeen year olds arrested in Baltimore City from the scope of the Juvenile Court Act, the uncontroverted evidence is that such basis no longer exists, and the exception is arbitrary, unreasonably discriminatory, and not related to any legitimate State objective.

The effect, however, is not hypothetical or theoretical; it is starkly real.

The sixteen and seventeen year olds, regardless of residence, arrested for an offense in Baltimore City, will be tried as, and if convicted be subject to the penalties of, adults. They will be "booked", and if unable to obtain bail will be held in the Baltimore City Jail with adult offenders; if convicted, they will be incarcerated in adult institutions, and largely, if not completely, be deprived of the social, psychological and psychiatric services, and educational and vocational opportunities afforded juveniles (Tr. 25, 55, 64–65, 69–70, 74–75, 76–83, 137–140). Further, if convicted as adults, these children may lose the right to vote; to serve in the Armed Forces; to secure many types of government and private employment (especially where bonds are required); and will carry forever the stigma of conviction.

While the discriminatory nature of the distinction herein involved would seem to be, and has been demonstrated to be, arbitrary and unreasonable only two cases seem directly to have considered the question.

One is Graves v. State, Court of Special Appeals of Maryland, Initial Term, 1967, No. 201, decided July 21, 1967 in a per curiam decision not for publication. Reliance was placed on Salsburg and McGowan, supra, and similar holdings by the Maryland Court of Appeals.

On the principal that, in the absence of evidence to the contrary (and there was none in Graves) it must be assumed that the Legislature had before it facts sufficient to justify its action, the opinion may be technically supportable, although the reference to phasing out would seem to speak of the past, rather than the present.[7] However, the opinion made no reference to the Rasin Report, or to State v. Gregori, 1924, 318 Mo. 998, 2 S.W.2d 747. That case held that a state law setting the age, for purposes of juvenile court jurisdiction, at seven-

---

6. Whether the instant case was deliberately selected or purely fortuitous, it would be difficult to imagine one which more dramatically points out the fact that the purported differentiation is not based on any essential differences between the individuals involved. Long was a resident of Baltimore City, arrested in Baltimore City. Brooks was a resident of Howard County, arrested in Baltimore City and charged with an offense identical with that of Long. If the laws under attack are valid, both will be treated as adults. Had both committed the same offense in Howard County, both would be treated as juveniles. Had Long committed the same offense in Howard County, he, although a resident of Baltimore City, would have been treated as a juvenile. Reductio ad absurdum?

7. " * * * the postponement of the effective date of the repeal of the exemption of Baltimore City, to enable, in all probability, adequate facilities to be obtained to care for the increase in the number of persons to be treated as juveniles due to the raise in the age limit." (p. 4 of Opinion).

teen in some counties and at eighteen in others was unconstitutional. The Court said (318 Mo. at 1002, 2 S.W.2d at 749):

"We think it evident that different acts, both relating, however, to the treatment of delinquent children, one of which provides that a child in one part of the State shall be guilty of a crime and the other shall be subjected in another part of the State to the Juvenile Court Act, deny equal protection of the law to persons coming within their scope, and that the amendments to chapter 21, art. 6, Laws of 1923, page 153, are unconstitutional."

So far the consideration of the constitutionality of the laws in question has been restricted to their criminal aspects, as to which this court finds them to be unconstitutional. An additional ground for invalidation is also found in the discriminatory effect upon juveniles whose conduct, although not criminal, evidences a need for help and attention. Nowhere is this better or more succinctly expressed than in the Rasin Report, pp. 10–11:

"One of the most compelling reasons for giving the Juvenile Court jurisdiction of children through age seventeen is the need to provide supervision for those children whose behavior is anti-social and deviant, although not criminal, and also for those children who may be neglected and dependent. The present statute defines a delinquent child as one (1) who violates any law or ordinance, or who commits any act which, if committed by an adult, would be a crime not punishable by death or life imprisonment; (2) who is incorrigible or ungovernable or habitually disobedient or who is beyond the control of his parents, guardian, or custodian, or other lawful authority; (3) who is habitually a truant; (4) who without just cause and without the consent of his parents, guardian, or other custodian, repeatedly deserts his home or place of abode; (5) who is engaged in any occupation which is in violation of law, or who associates with immoral or vicious persons; or, (6) who so deports himself as to injure or endanger the morals of himself or others. In Baltimore City, a child of sixteen or seventeen who may come within one of the last five categories is immune from the power of any court, for the Juvenile Court has no jurisdiction over that age group and the criminal court has no jurisdiction over individuals who have not violated a criminal statute. If the State is wise in defining a delinquent as it does, then there is no reason for excepting from the Juvenile Court's jurisdiction those sixteen and seventeen years olds in Baltimore City whose behavior causes them to fit the definition. It is clear that the thought which underlies the present definition of a delinquent is that children who engage in certain deviant behavior which is not in violation of a criminal statute are, nevertheless, in need of supervision, for such behavior may be and often is the precursor of more dangerous and costly criminal conduct."

That the effect of invalidation of the attacked legislation may require the additional expenditure of public funds, and may produce some administrative dislocation, may well be true. That truism was, however, clearly developed in the Rasin Report and the recognition of its impact resulted in its recommendation that the effective date of change be June 1, 1969.

That it may cost money and effort to correct an improper and unconstitutional condition is of course, no justification for the continuation of that condition. Moreover, the removal of Baltimore sixteen and seventeen year olds from the adult prison population (or their non addition to that population) would reduce, or at least not further increase, the present overcrowding of the adult penal systems (Tr. 74).

On the effect the removal of the exemption of Baltimore City would have on the juvenile system the testimony of the Director of the Maryland Depart-

ment of Juvenile Services was clear and convincing. There "would be a chaotic situation until we were able to secure sufficient funding and everything that goes with providing these necessary services." (Tr. 32). " \* \* \* [w]ithin a year of an undesirable management problem, we would again be able to survive and provide necessary services for all children up to the age of 18." (Tr. 34). "[W]ithout the necessary funding it would be longer than a year." (Tr. 37.)

That July 1, 1971 is probably only another date to be in turn postponed appears from the following testimony of the Director (Tr. 41–42):

"Because of lack of resources, the Commissioner of Correction has told me that we are not able to program for the 16 or 17 year old child.

"Q. Now, I also understand that—whether or not the postponement is granted until 1971, that you do not have sufficient funding to build the necessary facilities for the additional case load of 16 and 17 year olds by 1971, is that correct?

"A. The additional facilities is only one part of our lack.

"The other part is the provision of services, provision of such services as well as community services. There would be no additional facilities, institutional facilities available by July 1, 1971.

"MR. MATERA: I have no further questions, Your Honor.

"THE COURT: Well, if the change in Baltimore City were delayed until 1971, would you be much better off on July 1, 1971 than you will be on July 1, 1970?

"THE WITNESS: To the extent that we would have more time to make additional requests for interim funding.

"THE COURT: But if your requests were not granted?

"THE WITNESS: Well, if the requests are not granted—I told the Legislative Committee, the House Ways and Means Committee, as well as the House Judiciary Committee, unless funding is appropriated prior to the effective date of the change, I will be back next year saying we are still not prepared for the age change."

The court finds as a fact, and concludes as a matter of law, that the exemption of Baltimore City from the provision of Article 26, section 70–1(c) of the Maryland Code of Public General Laws defining a child as a person who has not reached his eighteenth birthday, and the provision of Article 4, section 240(b) of the Public Local Laws of Baltimore City, setting a juvenile age of sixteen years, are and each of them is, in contravention of the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States, and are invalid.

## RELIEF.

1. Plaintiffs have prayed that injunctions be issued against various individuals against enforcing, applying or implementing the provisions of the laws in question. The court is advised that these officials have so refrained, from the time of the institution of this suit, pending decision herein. It is assumed that the decision herein will be followed unless and until reversed on appeal, and that no injunction or restraining order need be issued.

2. Plaintiffs have also asked that all records with respect to the arrest and charging of the named plaintiffs and the class they represent with commission of offenses as adults in Baltimore City be expunged. The court believes that a satisfactory disposition of this matter can be effected by counsel for the parties.

The court will retain jurisdiction of this case with respect to the two immediately preceding paragraphs to take appropriate action if the court's expressed beliefs prove to be erroneous.

3. Retroactivity.

This decision shall apply to all cases not finally decided[8] on May 15, 1969, the date of the filing of this suit. While there would appear to have been little, if any, reliance on the decision in Graves v. State, supra, and while the Rasin Report cast at least grave doubts on the constitutionality of the Baltimore City exemption (as did the proposed phase out by the Legislature), these indicia were equally apparent to counsel for juveniles. The disruption resulting from this decision will inevitably be severe, and the court accordingly declines to make the decision retroactive beyond May 15, 1969.

The foregoing constitutes the court's findings of fact and conclusions of law whether or not expressly so characterized. F.R.Civ.P. 52(a).

### ORDER

This matter, having come on before this Court for a hearing, memoranda having been submitted and testimony having been taken, for the reasons set forth in the Court's opinion of this date, it is hereby ordered and adjudged that:

1. The Maryland Juvenile Causes Act, Md.Ann.Code, Art. 26, Secs. 51 et seq., be declared unconstitutional insofar as it exempts Baltimore City from the uniform juvenile age requirement of eighteen (18) years;

2. The provisions of Art. 4, S240 of the Public Local Laws of Baltimore City, as applied since 1945, be declared unconstitutional insofar as they define a child as a "person under the age of sixteen years" thereby excluding sixteen and seventeen year olds in Baltimore City from the scope of the Juvenile Causes Act;

3. All those between sixteen and eighteen years of age when arrested, except in the case of capital offenses, who are currently confined in City Jail and other sites of incarceration in Baltimore City awaiting trial be released to the juvenile authorities as expeditiously as possible.

4. There be entered an order for such other and further relief as the Court may find to be just and equitable.

---

8. A case is "finally decided" when the time for direct appeal expires without appeal having been taken, or if direct appeal has been taken and decision rendered, the date on which certiorari was denied or on which the time to apply for certiorari expired without such an application having been made. See Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601.