

**Decided May 16, 1983**

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
COMMONWEALTH TRIAL COURT

| | | |
|---|---|---|
| AUGUSTINE T. CAMACHO. | ) | CIVIL ACTION NO. 83-117 |
| Plaintiff, | ) | |
| vs. | ) | ORDER DISMISSING COMPLAINT |
| GREGORIO T. CAMACHO, ASUNCION C. CASTRO, and MONICA C. DUENAS, | ) | |
| Defendants. | ) | |

This matter came before the court on the defendants' motion to dismiss.

Some history of importance to judicial administration in the Northern Mariana Islands must be recalled in order to resolve the existing motion before the court.

Following extensive negotiations between the United States Government and the Marianas Political Status Commission, the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America (Covenant)[1] was executed and subsequently approved

---

[1] Public Law No. 94-241, 90 Stat. 263 (1976). Reprinted in 48 U.S.C. §1681 note.

by the respective governments. In order to implement the provisions of Article II of the Covenant whereby the people of the Northern Mariana Islands were to formulate and approve a Constitution for the Northern Mariana Islands, a Constitutional Convention was convened on the island of Saipan, Northern Mariana Islands and subsequently the Constitution was adopted by the people.[2]

Also, pursuant to the terms of Article II, Section 202, the Constitution became effective January 9, 1978 by U.S. Presidential proclamation.[3]

Prior to January 9, 1978 all judicial matters were processed and administered pursuant to Title 5 of the Trust Territory Code. In essence, a two-tier trial court judicial system, composed of a Marianas District Court (with lay judges) and the Trial Division of the High Court, handled all trial matters.[4] Pursuant to 5 TTC §52, appeals from the Trial Division of the High Court were had to the Appellate Division of the High Court.

---

[2] The Constitution was submitted to the electorate on March 6, 1977 and approved. All references hereafter made to the Constitution are to the Northern Mariana Islands Constitution.

[3] Proclamation 4534 dated October 24, 1977.

[4] See, for example, 5 TTC, Chapters 3 and 5. Although Chapter 7 of Title 5 provides for a Community Court, no such court was formed in the Northern Mariana Islands.

The subject of transition of judicial matters was addressed in the Constitution, Schedule on Transitional Matters, Section 4. The pertinent provision, for the purposes of resolving this matter, is found in the last sentence which reads:

> "Civil and criminal matters pending before the High Court of the Trust Territory of the Pacific Islands on the effective date of the Constitution that involve matters within the jurisdiction of the Commonwealth Trial Court or the United States District Court for the Northern Mariana Islands shall remain within the jurisdiction of the High Court until finally decided."

Accordingly, after January 9, 1978, the Trial Division of the High Court in the Marianas Islands proceeded to dispose of the cases filed before January 9, 1978 in the High Court.[5]

From the cases decided by the Trial Division of the High Court in the Mariana Islands, a number of appeals were filed in the Appellate Division. The notices of appeal were

_____

[5] Any cases filed after January 9, 1978 were filed either in the District Court or the Commonwealth Trial Court pursuant to the provisions of Article IV, §2 of the Constitution. Thus, the Trial Division of the High Court in the Northern Mariana Islands could justify its existence only as long as it took to dispose of the pre-January 9, 1978 cases.

filed before and after January 9, 1978.[6]  Most of these appeals have now been decided and some have been remanded to the Trial Division of the High Court for further proceedings.[7]

The case now before the court had its origin in High Court Civil Action 15-74, <u>In the Matter of the Estate of Maria T. Camacho</u>.

The <u>Camacho</u> case concerned title to certain land in San Roque Village, Saipan.  On December 15, 1982 a judgment was entered (a copy of which is attached to the complaint in this action) and an appeal was filed therefrom and the High Court Appellate Division accepted for filing the notice of appeal. The appellee in that case is the plaintiff in this case.

The thrust of plaintiff's action is to have this court declare that the Appellate Division of the High Court does not have appellate jurisdiction over the appeal and therefore this court should quiet title to the land in the plaintiff.

_____

[6]
According to the records of the High Court Appellate Division there were 30 appeals pending on January 9, 1978 and 40 appeals filed after January 9, 1978, which were from Mariana Island cases.  Also, according to the High Court records, there are now 4 appeals left which means that since January 9, 1978 the Appellate Division has heard and decided (or remanded to the Trial Division) 66 appeals.

[7]
For example, Civil Appeal No. 274, <u>Diaz v Diaz</u>.  Subsequent to remand, the Trial Division heard additional evidence and argument and rendered a judgment.  A new appeal was filed on this judgment and it is now pending in the Appellate Division of the High Court.

The defendants have filed a motion to dismiss because of the pending appeal in the High Court and because the judgment signed in Camacho on December 15, 1982 was signed by a person who had no authority to sign the judgment.[8]

Turning first to the latter ground, the court can and does take judicial notice that as of December 15, 1982 the person signing the judgment (H.W. Burnett) was not the Chief Justice of the High Court. However, the listing of the appellation under the signature line does not necessarily void the judgment. The key is whether the person signing the judgment had the authority to sign. 5 TTC §1 provides that the Secretary of the Interior may appoint temporary judges to serve on the High Court. There is a presumption of the regularity of acts and it is incumbent upon the one attacking the judicial act to support the conclusion

---

[8] Although not articulated in the motion, it is presumed the motion is based on Rule 12(b)(1), Com.R.Civ.P. which is lack of jurisdiction over the subject matter and/or the plaintiff has failed to state a claim upon which relief can be granted. (Rule 12(b)(6)) Although the court is usually strict about requiring counsel to delineate the basis of the motion (Com.R.Prac. 8(a)(1)), it is observed that defendants' counsel is a trial assistant not formally trained in the law and the issues framed here are easily determined. Additionally, the plaintiff has raised no procedural objection to the motion.

that the act is null and void for lack of authority.
46 AmJur 2d, Judgments, §28. All this court has before it
is the unsworn assertion in defendants' points and authorities
that H.W. Burnett was not a temporary judge on December 15,
1982. This is not sufficient to overcome the presumption of
regularity. The very fact that the Appellate Division of
the High Court has accepted the appeal from the judgment
indicates that court recognizes the viability of the judgment.

This leads to the next determination to be made and
that is the jurisdiction of appeals from judgments of the
Trial Division of the High Court over cases which originated
and were filed in the Northern Mariana Islands prior to
January 9, 1978 but appealed after January 9, 1978. [9]

The plaintiff relies solely on Diaz v Diaz, Civil
Action No. 81-0058, District Court for the Northern Mariana
Islands, amended decision dated November 3, 1982. This case
holds that once the Trial Division of the High Court renders
judgment, the case is "finally decided" and that "jurisdiction
of appeals from such ... (trial division judgments) will be
in the United States District Court for the Northern Mariana
Islands." Slip opinion at page 3.

---

[9] Camacho, was filed in the Northern Mariana Islands in
1974, heard sometime thereafter, taken under advisement,
but, as noted above, not decided until December 15, 1982.

626

The basis for this conclusion is the wording found in the "Analysis of the Constitution of the Commonwealth of the Northern Mariana Islands" (Analysis) at page 197 which reads in pertinent part:

> For purposes of classifying matters pending before the High Court, matters which are before the trial division of that court are to be considered as finally decided when a final judgment is had. Jurisdiction of appeal's from such cases will be in the United States District Court for the Northern Mariana Islands sitting as an appellate court or before the Commonwealth appeals court if the federal district court is unavailable to decide appeals of Commonwealth cases. Matters before the High Court on appeal may not be further appealed under Commonwealth law.

The Analysis was prepared after the Constitutional Convention of the Northern Mariana Islands adopted the Constitution but before the Constitution was submitted to the electorate for approval. The purpose of the Analysis (as stated on page 1) is to explain and summarize the intent of the Constitutional Convention. The Analysis was approved by the Convention on December 6, 1976 and was made available to the electorate before voting on the Constitution. Only the Constitution (and not the Analysis) was submitted to the electorate for approval.

When comparing the wording in the last sentence of Section 4, Schedule on Transitional Matters in the

627

Constitution (Page 3, supra) with that of the Analysis on page 197, a patent conflict between the two provisions is revealed.

■ The Constitution states that the High Court retains jurisdiction over the matters "until finally decided." The term "finally decided," when used to describe court action, is that time when a judgment is rendered, the availability of an appeal is exhausted or the appeal is decided and the time for any petition for certiorari has elapsed. Linkletter v Walker (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed. 2d 601; Long v Robinson, 316 F.Supp. 22, 31 (D.C. Md); See also Words & Phrases, Vol. 16, 1981-82 Supp. "Finally Adjudicated."

■ Thus there is no difficulty in determining that Section 4 of the Schedule on Transitional Matters in the Constitution contemplated and intended that High Court matters would remain within the High Court System until any appeals are finally determined and this, of course, includes any remand from the Appellate Division to the Trial Division.

Yet, the Analysis, at page 197, states that the matters "are considered as finally decided when a final judgment is had" and appeals from those cases go to the Appellate Division of the District Court. This cannot be so.

■ It is without argument that the Constitution is the law which this court must look to. The Analysis is not the law.

628

It was not voted on by the electorate. At most, it is an attempt to clarify what the law is as stated in the Constitution. To use the Analysis as authority to overcome the clear language of the Constitution is not permissible.

A review of the Analysis further reveals the substantial, if not intolerable, problems which would result if its view is accepted. The Analysis purports to say that if a notice of appeal had been filed before January 9, 1978 then the High Court Appellate Division would process and determine the appeal but if the notice of appeal was filed after January 9, 1978, the appeal would be processed in the District Court Appellate Division. If in the former case the Appellate Division remands the case, to what court does it go? If it is to the Trial Division of the High Court[10] and a further appeal is had from its judgment, does the appeal go to the Appellate Division of the District Court? If so, what appellate rules and procedures are used? Does the District Court Appellate panel need to recognize the former action of the High Court Appellate panel?

---

[10] This would seem to be the only court since it would be a "judicial first" for a remand from an appellate court to a completely foreign court (Commonwealth or District Court) over which it has no supervision, and no control or power to direct a new trial or further hearings.

If the notice of appeal is filed after January 9, 1978 and the appeal goes to the Appellate Division of the District Court, the same type of intriguing and perplexing questions arise. Upon decision of the appellate panel, does the mandate (or remand) go to the Trial Division of the High Court? If so, what control, supervision, or direction does the appellate body have over the lower court? Is there an appeal from the Appellate Division of the District Court to the U.S. 9th Circuit Court of Appeals of the High Court case?[11]

Without exhausting all of the questions which are obvious and not so obvious, suffice to say that a judicial nightmare is created once two different court systems get involved in a single case. The real possibility exists that one litigant will opt for jurisdiction to stay in the High Court while another litigant will assert that the District Court has jurisdiction.[12]

---

[11] 6 TTC §357 provides that decisions of the Appellate Division of the High Court are final unless the U.S. Congress provides otherwise.

[12] There is no indication that the High Court is willing to concede that Diaz v Diaz, supra, is the law. Thus it, in all likelihood, will refuse to give up jurisdiction and will process the Marianas appeals just as it has done in the 30 appeals pending on January 9, 1978 and the 40 appeals filed thereafter. Should Diaz be correct, this would mean that all High Court appellate decisions rendered on cases where the notice of appeal was filed after January 9, 1978 are a nullity. The court leaves to the readers imagination the effect this would have on the administration of justice in the Commonwealth.

It is concluded that Section 4 of the Schedule on Transitional Matters in the Constitution is clear in mandating that cases decided before or after January 9, 1978 in the Trial Division of the High Court remain in the court system of the High Court until the matter is finally disposed of. This means that the Appellate Division has jurisdiction to process, hear and decide all appeals from the Trial Division of the High Court and if there is a remand or further hearing required, the Trial Division of the High Court continues with jurisdiction and no other court has jurisdiction in the matter.[13] If another appeal is taken after the trial on remand, the case is still not finally decided and any appeal is to the Appellate Division of the High Court.

Once the matter is finally decided in the High Court, the course for the litigants to follow is now clearly set out. The High Court has ruled it no longer has <u>enforcement</u> powers over its judgments in the Northern Mariana Islands after they are finally decided. <u>Sablan v Sablan</u>, Civ. App. 331, decided 10-1-80 (Tr.Div. 194-77).

---

[13] This is not to say that a judgment of the High Court cannot be sued upon in the Commonwealth and reduced to a "local" judgment as has been done before. See <u>Bank of America v Skilang</u>, CTC Civil Action No. 82-68. Nor does it mean that the U.S. Congress cannot alter the relationships of the courts and vest jurisdiction in one court while taking it away from another.

A suit on the judgment to reduce it to a local judgment for enforcement is a relatively simple matter so that there exists a means to satisfy any such judgment.[14] Certainly, this is a much more rational, efficient, and judicially acceptable manner of proceeding than that which would result if the erroneous conclusions of the Analysis were to be carried out.

IT IS ORDERED that plaintiff's complaint be dismissed for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted.

Dated at Saipan, CM, this 16th day of May, 1983.

Robert A. Heffner, Chief Judge

---

[14] It has been held by this court that a suit to reduce a High Court judgment to a Commonwealth judgment can be entertained while the High Court case is on appeal. Diaz v Diaz, CTC C.A. 82-221. (Order Denying Motion for Summary Judgment, dated 10-28-82) However, it was pointed out that procedural and practical problems can occur should a reversal occur (and which actually did occur in Diaz) if the judgment is enforced. Rule 60(b), Com.R.Civ.Proc. would provide little solace or aid to the winning party if the former judgment holder has spent all of the money or otherwise cannot satisfy the new judgment.