## CLAYTON MAURICE GREENE *v.* STATE OF MARYLAND

[No. 7, September Term, 1970.]

*Decided January 29, 1971.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, THOMPSON, and POWERS, JJ.

*William F. Gosnell,* with whom was *Erica L. Gosnell* on the brief, for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Josef E. Rosenblatt, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Clayton Maurice Greene, the appellant, was convicted by the Criminal Court of Baltimore, Judge Albert L. Sklar presiding without a jury of storehouse breaking and stealing merchandise of the value of $5. or more, the crime occurring on December 11, 1968.

Greene alleges that since, at the time of the crime, he was age 16, his date of birth being September 11, 1952, exclusive jurisdiction to try him was vested in the Juvenile Court under Md. Code, Art. 26, §§ 51-101 inclusive, in the absence of waiver, Art. 26, § 70-16. He contends that the exception contained in Art. 26, § 70-1 (c) [Declaring that a child under the jurisdiction of the Juvenile Act is a person who has not reached his 18th birthday, except in Baltimore City, where, until July 1, 1971, such child is defined as a person who has not reached his 16th birthday] is unconstitutional as a violation of the equal protection clause of the Fourteenth Amendment of the Constitution of the United States and Art. 23 of the Declaration of Rights of Maryland.

We considered this identical question in *Graves v. State,* an unreported opinion, No. 201, Initial Term, 1967, filed

July 21, 1967, where, as in the instant case, no evidence was produced to show an insufficient legislative basis for the classification. *Graves* held that in the absence of such evidence under *Stevens v. City of Salisbury,* 240 Md. 556, 214 A. 2d 775 and *Kirkwood v. Provident Sav. Bank of Baltimore,* 205 Md. 48, 106 A. 2d 103, the presumption of constitutionality of a legislative enactment would prevail. We also relied on the long history in the State of Maryland of the enactment of local laws affecting only some counties and of the exemption of some counties from the operation of general laws, citing *Stevens v. State,* 89 Md. 669, 43 A. 929, *State v. Shapiro,* 131 Md. 168, 101 A. 703, *Salsburg v. State,* 201 Md. 212, 94 A. 2d 280 and particularly *Salsburg v. Maryland,* 346 U. S. 545, 74 S. Ct. 280, 98 L. Ed. 281 sustaining a local law of Anne Arundel County permitting illegally procured evidence in certain trials although inadmissible elsewhere in the State. Although *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 subsequently held all such evidence inadmissible, we considered the *Salsburg* case as precedent for the validity of territorial classifications. We also relied upon *McGowan v. Maryland,* 366 U. S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393 relating to different county laws as to Sunday sales of merchandise. Of course, we were aware the Maryland courts had declared unconstitutional some acts of the legislature where there was no rational basis for territorial distinctions. *Maryland Coal & Realty Co., et al. v. Bureau of Mines, et al.,* 193 Md. 627, 69 A. 2d 471; *Dasch v. Jackson,* 170 Md. 251, 183 A. 534.

In *Long v. Robinson,* 316 F. Supp. 22 (affirmed without discussion of the major question by the United States Court of Appeals for the Fourth Circuit, No. 15,033, decided January 18, 1971) the United States District Court for the District of Maryland found the evidence produced therein sufficient to overcome the general presumption of the validity of a legislative act and held Md. Code, Art. 26, § 70-1 (c) unconstitutional. The District Court relied on a report of the Legislative Council Special Committee on Juvenile Courts, January 1966, generally known as the

Rasin Committee Report recommending a uniform age of 17 throughout the State. The Report recited that if formerly there was a disparity between children in Baltimore City and children in the counties, there was little to show such differences today. The Report continued:

"If differentiation of individuals is necessary, as it surely is, it should be made on the basis of facts about the individual, and not on the basis of an assumption about a huge and diverse group such as the youthful population of a city. Whatever differentiation is needed may be made by a court, either by the device of a waiver to the adult criminal court, or by the nature of the disposition following and adjudication of delinquency. The patent unfairness and unjustified inequality which results from the present disparity undermines a basic value of our legal system. . . ."

Other evidence in the case was summarized by the trial judge as follows: 316 F. Supp. at 27-28.

"The testimony in this case fully supports the conclusion that there is no psychological or physical basis for distinguishing between sixteen and seventeen year olds residing in Baltimore City and in the Counties. Such is the testimony of Robert C. Hilson, Director of the State Department of Juvenile Services, after working with city and county children for a number of years; of Dr. John Hamilton, a licensed medical doctor, practicing psychiatrist, and Director of Clifton T. Perkins State Hospital, who also testified that City children on the whole were less mature than County children, and required more intensive services and attention; James V. Bennett, Director of the Federal Bureau of Prisons for twenty-seven years, and formerly in charge of the National Training School for Boys in

Washington, D. C.; and Judge Joseph Howard, a member of the Supreme Bench of Baltimore City, and a former probation officer and social caseworker."

The District Court found no evidence had been produced to show that the difference in classification served any legitimate state objective. The Judge pointed to the consequences following a criminal conviction as an adult such as loss of right to vote and incarceration with adults, as opposed to the consequences of a finding of delinquency under the Juvenile Act, including additional psychological and psychiatric services and the confinement with other children. The Judge also found discrimination in the effect on juveniles whose conduct, although not criminal, evidenced the need for help and attention. Lastly, the Judge pointed out that the legislature of Maryland had applied the Juvenile Act to children between 16 and 18 in Baltimore City by Laws of Maryland, 1966, Ch. 127, to become effective July 1, 1969, but that the effective date of this legislation had been extended by the Laws of Maryland, 1969, Ch. 432 to July 1, 1970, and further extended by the Laws of Maryland, 1970, Ch. 730 to July 1, 1971.

Although decisions of the United States District Courts or of United States Courts of Appeals, unlike decisions of the Supreme Court of the United States, are not binding upon this Court, *Moon v. State,* 1 Md. App. 569, 232 A. 2d 277; *Lawrence v. Woods,* 432 F. 2d 1072, we are, in this case, persuaded to follow the federal courts on the basis of the testimony produced in *Long v. Robinson, supra.* That case has already produced considerable confusion in the processing of juveniles in the courts of Baltimore; a contrary decision by this Court would simply add to the confusion. In addition, the legislature has deemed it wise to abolish the exception for Baltimore City as of July 1, 1971, and further attempts to extend the date now appear unlikely.

Having decided Md. Code, Art. 26, § 70-1 (c), insofar

as 16 and 17 year old children in Baltimore City are treated differently from all other children of the same age in the State, is invalid, there arises the question of severability. We have no difficulty in deciding that only the exception for Baltimore City is invalid. The intention of the legislature is shown by the presence of a severability clause, Md. Code, Art. 26, § 70-26, and by the repeal of the exception by the legislature, albeit with a delayed effective date. Therefore, the Act is now effective in uniform application throughout the State. See *Buckheit v. Buckheit,* 10 Md. App. 526, 272 A. 2d 54 for a discussion of severability in general.

In *Long v. Robinson, supra,* the trial court held its decision applicable to all cases not finally decided on May 15, 1969, the date of institution of the proceedings therein.[1] Although the decision in this respect was affirmed on appeal, the appellate court did so on the basis that the class action suit involved there could affect only those persons whose convictions had not become final on such date. It specifically reserved the question as to whether or not it would apply to those persons whose convictions had become final on May 15, 1969.

We think the administrative dislocation caused by the decision would be reduced if we decided its retroactive application at this time. We hold that the decision is not retroactive to those cases finally decided on May 15, 1969, finally being defined as in note 1 *supra.* We adopt the finality rule applied in *Long v. Robinson, supra,* only to keep the administrative burdens at a minimum.

The Supreme Court has used a number of different methods of determining the retroactive application of constitutional decisions. In *Linkletter v. Walker,* 381 U. S. 618, 85 S. Ct. 1731, 14 L.Ed.2d 601, the Court used the

---

1. Under the definition, applied by the District Court and approved on appeal, a case is finally litigated when the time for direct appeal expires without an appeal having been taken, or if an appeal has been made, the date on which *certiorari* was denied by the Supreme Court of the United States, or the time to apply for *certiorari* has expired without such an application having been made.

date of the decision and adopted the finality definition as used in note 1 herein. *Johnson v. New Jersey*, 384 U. S. 719, 86 S. Ct. 1772, 16 L.Ed.2d 882 used the date trials began. *Desist v. United States*, 394 U. S. 244, 89 S. Ct. 1030, 22 L.Ed.2d 248 used the date illegal electronic surveillance occurred. *Stovall v. Denno*, 388 U. S. 293, 297, 87 S. Ct. 1967, 1970, 18 L.Ed.2d 1199 applied the date the illegal confrontations occurred and set out the criteria on the question as follows:

". . . (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

Of course, if the constitutional question strongly affected determinations of guilt or innocence, the constitutional decision was held to be fully retroactive, as in *Gideon v. Wainwright*, 372 U. S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799; *Hamilton v. Alabama*, 368 U. S. 52, 82 S. Ct. 157, 7 L.Ed.2d 114, and *Douglas v. California*, 372 U. S. 353, 83 S. Ct. 814, 9 L.Ed.2d 811, all concerning the denial of counsel.

The courts of Maryland experienced in the wake of *Schowgurow v. State*, 240 Md. 121, 213 A. 2d 475 the disruptive effect of a constitutional decision made as retroactive as the rule we are adopting here; however, this Court feels that today's decision will preserve justice without increasing the already considerable administrative uncertainty and confusion.

Reviewing the standards set out in *Stovall v. Denno*, *supra*, we note that any further retroactivity would tend to affect persons who are either now adults or nearing adulthood. As to these persons who have been adversely affected by the denial of treatment as juveniles, the harm has already been done. They have been incarcerated with adults and denied the juvenile probation services at the time when those services would have been most effective.

It would serve little useful purpose to now extend this decision to cover these persons.

Under Md. Code, Art. 26, § 70-16, a conviction in the Criminal Court of Baltimore would have been proper if the Juvenile Court had waived jurisdiction of the appellant; therefore, pursuant to Md. Rule 1071, we remand the case for the purpose of having such a hearing conducted in accordance with the present provisions of § 70-16. In the event the Juvenile Court determines not to waive jurisdiction, or if the State decides not to prosecute the case further, the trial court is directed to vacate the judgment previously entered in the Criminal Court. If, on the contrary, the Juvenile Court determines to waive jurisdiction, we direct the transcript be returned to this Court for determination of the remaining issue in the case.

*Case remanded for further proceedings. Mandate to issue forthwith.*