## STATE OF MARYLAND *v.* ERMO P. INGEL

[No. 197, September Term, 1973.]

*Decided August 6, 1973.*

---

516

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

*Mary Elizabeth Kurz, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County*, and *Richard P. Arnold, Assistant State's Attorney for Prince George's County*, on the brief, for appellant.

*Roy Lucas*, with whom was *James K. Foley* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

This appeal concerns the constitutionality of Code, Art. 43, § 139, which designates as misdemeanors certain acts relating to the termination of human pregnancy: [1] We hold:

---

1. Code, Art. 43, § 139 (a) reads:
   "A person is guilty of a misdemeanor if he
   
   (1) Sells or gives, or causes to be sold or given, any drug, medicine, preparation, instrument, or device for the purpose of causing, inducing, or obtaining a termination of human pregnancy other than by a licensed physician in a hospital accredited by the joint commission for accreditation of hospitals and licensed by the State Board of Health and Mental Hygiene; or
   
   (2) Gives advice, counsel, or information for the purpose of

(1) the provision of the section that the specified acts are crimes if done "other than by a licensed physician" is not constitutionally proscribed;

(2) the provision of the section that the acts are crimes if done "other than ... in a hospital accredited and licensed by the State Board of Health and Mental Hygiene" is unconstitutional on its face.

The basis of our holdings is the dictates of *Roe v. Wade*, U. S. 93 S. Ct. 705, and *Doe v. Bolton*, U. S. 93 S. Ct. 739,[2] each decided 22 January 1973, and which, according to *Roe*, at 733, are to be read together. Whether our holdings govern the disposition of the case before us depends upon how *Roe* and *Doe* are to be applied to criminal prosecutions.[3] We hold further:

(3) the dictates of *Roe* and *Doe* are fully retroactive with respect to Code, Art. 43, § 139 (a).

Therefore our holding that the provision of § 139 (a), designating certain acts as crimes if done other than in a hospital accredited and licensed by the State Board of Health and Mental Hygiene is unconstitutional on its face, applies to and is dispositive of the case here reviewed. The result is that we affirm the order of the Circuit Court of

causing, inducing, or obtaining a termination of human pregnancy other than by such physician in such a hospital; or

(3) Knowingly assists or causes by any means whatsoever the obtaining or performing of a termination of human pregnancy other than by such physician in such a hospital."

Subsection (b) of § 139 prescribes the penalty upon conviction of an act proscribed by subsection (a):

"Any person who violates any provision of this section, upon conviction, is subject to a fine of not more than five thousand dollars for each offense, or to imprisonment for not more than three years, or both such fine and imprisonment. The penalties in this section are in addition to and not in substitution for any other penalty or penalties applicable to particular classes of persons under other laws of this State."

**2.** Citation of these cases hereafter is to the Supreme Court Reporter.

**3.** Neither case reached the Supreme Court in the posture of a criminal conviction. Each was an action for declaratory and injunctive relief, and the question of retroactive application *vel non* was not material.

Prince George's County passed 12 April 1973 concerning ERMO P. INGEL.[4]

I

The order of 12 April 1973 was issued in a post conviction proceeding initiated by Ingel. On 16 December 1971 he came on for trial in the Circuit Court for Prince George's County in Criminal Appeals No. 14,786 under a warrant charging he had violated the abortion laws, Code, Art. 43, § 139. A verdict of guilty was rendered upon his plea of guilty,[5] and on 31 January 1972, according to the docket entries, he was sentenced "to the jurisdiction of the Department of Correction for a period of 1 year. Sentence to incarceration is suspended and the Defendant is placed on probation under the Department of Parole and Probation for an indeterminate period of time."[6] On 25 January 1973 Ingel moved to vacate the judgment. The court below refused to consider the motion because the relief prayed was properly to be sought under post conviction procedures. Code, Art. 27, § 645 A. Ingel filed a petition for post conviction relief on 8 February. He alleged that the statute under which he was convicted was unconstitutional in the light of *Roe v. Wade, supra,* and *Doe v. Bolton, supra.* Upon hearing in the Circuit Court for Prince George's County, Couch, J., believed that the statute was unconstitutional and passed the order, which we now affirm, that the plea of guilty be stricken and

4. Two other sections are under the subtitle "Abortion" in Art. 43. Section 137, subsection (a) delineates who may terminate a human pregnancy otherwise than by birth, where the termination may take place, the conditions under which the pregnancy may be terminated, and subsection (b) proscribes the termination under specified conditions. Subsection (c) provides for the keeping of records. Violation of § 137 is not designated a crime and no sanction is provided therefor.

Section 138 gives protection from civil liability to persons and hospitals for refusing to perform, participate in, or submit to abortion.

The constitutionality of §§ 137 and 138 is not before us, and we express no opinion thereon.

5. The record before us does not include a transcript of the proceedings of the trial. It was indicated in oral argument before us that Ingel was a "licensed physician" who was convicted of performing an abortion in other than "a hospital accredited by the joint commission for accreditation of hospitals and licensed by the State Board of Health and Mental Hygiene."

6. See Code, Art. 27, § 641 A, which authorized grant of probation "for a period longer than the sentence but not in excess of five years."

that the sentence imposed be vacated and set aside. The State applied for leave to appeal. Code, Art. 27, § 645-I; Maryland Rules BK45 c and BK46. We granted the application and ordered the case to be transferred to the regular appeal docket under procedures in conformity with Chapter 1000 of the Maryland Rules of Procedure. Rule BK47. Two questions were presented: (1) whether Code, Art. 43, § 139 was unconstitutional under *Roe* and *Doe* and (2) whether *Roe* and *Doe* have retroactive application.

## II

We give the reasons for our holdings regarding Code, Art. 43, § 139.[7]

### (1)

#### *The Requirement as to a Licensed Physician*

The opinion of the Court in *Roe* held: "The State may define the term 'physician', . . . to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined." 93 S. Ct. at 732-733. This conclusion was arrived at upon consideration of constitutional rights. Thus, the "licensed physician"[8] provision of the Maryland statute is constitutionally permissible. If other than a licensed physician performs the acts set out in Code, Art. 43, § 139 (a), he has committed a misdemeanor and upon conviction is subject to the punishment authorized by § 139 (b).

---

**7.** Art. 43, §§ 137-139 is a codification of Chapter 470, Acts 1968 (see Chapter 736, Acts 1970). Prior to 1 July 1968, the effective date of Ch. 470, Acts 1968, causing a miscarriage or abortion and committing certain acts pertaining thereto were criminal offenses under the provisions of Code, Art. 27, § 3. It was held that abortion was a misdemeanor at common law, and that Art. 27, § 3 did not change the common law rule. *Worthington v. State,* 92 Md. 222. Compare, however, *Roe v. Wade, supra,* 716-718.

Ch. 419, Acts 1972, adding a new § 129 A to Art. 43, effective 1 July 1972, prohibits abortion referral businesses engaged in for profit and agreements to accept referrals from certain medical referral businesses located out of Maryland. Violation of the statute is a misdemeanor punishable by a fine.

**8.** " 'Physician' means any person, including doctors of osteopathy, licensed to practice medicine in the State of Maryland in compliance with the provisions of this subtitle [Practitioners of Medicine]." Code, Art. 43, § 119 (e). We note that a license to practice osteopathy authorizes the holder thereof to practice "by manipulations only." Code, Art. 43, § 477.

(2)

*The Requirement as to a Hospital Accredited by the Joint Commission for Accreditation of Hospitals and Licensed by the State Board of Health and Mental Hygiene*

*Doe* dealt with procedural requirements contained in the Georgia Criminal Code, §§ 26-1201 through 26-1203, formulated by Georgia Laws, 1968 Session, 1249, 1277-1280. That statute required, among other conditions, as does the Maryland statute,[9] that, for an abortion to be authorized or performed as a non-criminal procedure, it take place in a hospital licensed by the State Board of Health and also accredited by the Joint Commission on Accreditation of Hospitals. § 26-1202 (b) (4).

(i)

*Doe* held flatly that the JCAH accreditation requirement "... does not withstand constitutional scrutiny in the present context. It is a requirement that simply is not 'based on differences that are reasonably related to the purposes of the Act in which it is found.' Morey v. Doud, 354 U. S. 457, 465, 77 S. Ct. 1344, 1350, 1 L. Ed. 2d 1485 (1957)." This holding is dispositive with respect to the JCAH accreditation requirement of the Maryland Act.

(ii)

*Roe* held that a state criminal abortion statute that excepts from criminality only a *life saving* procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment. 93 S. Ct. at 732. It then established limits of regulation, *idem*:

" (a) For the stage prior to approximately the end of the first trimester, the abortion decision and its

---

**9.** Both the Georgia and Maryland statutes are patterned upon the American Law Institute's Model Penal Code, § 230-3 (Proposed Official Draft, 1962). *Doe,* at 742. See *Roe,* n. 37, at 720.

effectuation must be left to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability the State, in promoting its interest in the potentiality of human life, may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother."

*Doe* held that the requirement of the Georgia statute that an abortion must be performed in a hospital was invalid "because it fails to exclude the first trimester of pregnancy. . . ." 93 S. Ct. at 749. Because the Maryland criminal abortion statute contains a like requirement, it too is invalid for the same reason. We point out, however, that the Court in *Doe* explicitly expressed no opinion "on the medical judgment involved in any particular case, that is whether the patient's situation is such that an abortion should be performed in a hospital rather than in some other facility." *Idem.* It observed:

"Appellants and various *amici* have presented us with a mass of data purporting to demonstrate that some facilities other than hospitals are entirely adequate to perform abortions if they possess these qualifications. The State, on the other hand, has not presented persuasive data to show that only hospitals meet its acknowledged interest in insuring the quality of the operation and the full protection of the patient. We feel compelled to agree with appellants that the State must show more than it has in order to prove that only the full resources of a licensed hospital, rather than those of some other appropriately licensed institution, satisfy these health interests." *Idem.*

## III

Because *Roe* and *Doe* were actions for declaratory and injunctive relief, the question of retroactivity was not before the Supreme Court. We are faced with the issue, however, in order to dispose of the case before us, and as we have indicated, we hold that the dictates of *Roe* and *Doe* are fully retroactive.

Broadly speaking, the Supreme Court has decided that some of its holdings are to be given fully retroactive effect, that others apply where the convictions have not become final, and that others are to be applied prospectively. It has viewed the retroactivity or nonretroactivity of such decisions as a function of three considerations. These were summarized in *Stovall v. Denno,* 388 U. S. 293, 297:

> "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

It said in *Desist v. United States,* 394 U. S. 244, 249: "Foremost among these factors is the purpose to be served by the new constitutional rule." When the purpose involved the reliability of the fact determining process of guilt or innocence, the Court accorded full retroactivity to the decision, without regard to the other two criteria.[10] The

10. *For example*: (The first citation is the case enunciating the rule; the second citation is the authority for the retroactive application of it) *Hamilton v. Alabama,* 368 U. S. 52 (right to counsel at arraignment plea), *Stovall v. Denno,* 388 U. S. 293; *Douglas v. California,* 372 U. S. 353 (right to counsel on appeal) *Stovall v. Denno, supra; Gideon v. Wainwright,* 372 U. S. 335 (right to counsel at trial), *Kitchens v. Smith,* 401 U. S. 847; (right to counsel at trial resulting in convictions used to increase punishment), *Burgett v. Texas,* 389 U. S. 109; (right to counsel at trial resulting in convictions used to impeach), *Loper v. Beto,* 405 U. S. 473; *White v. Maryland,* 373 U. S. 59 (use of guilty plea taken without assistance of counsel), *Arsenault v. Massachusetts,* 393 U. S. 5; *Mempa v. Rhay,* 389 U. S. 128 (presence of counsel at probation revocation hearing), *McConnell v. Rhay,* 393 U. S. 2; *Griffin v. Illinois,* 351 U. S. 12 (right to indigent to transcript on appeal), *Eskridge v. Washington State Brd.,* 357 U. S. 214; *Jackson v. Denno,* 378 U. S. 368 (procedure to determine voluntary

rationale of those decisions which accord full retroactivity to a holding clearly requires that a conviction based upon an unconstitutional statute not be permitted to stand no matter when obtained. A declaration that a statute prescribing conduct to be criminal is unconstitutional goes even beyond a question of the reliability of the fact determining process of guilt or innocence. The conduct unconstitutionally proscribed is not a crime; a conviction under it is not merely erroneous, it is illegal, and should not be the cause of punishment. *Ex Parte Siebold*, 100 U. S. 371, 376-377. "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Norton v. County of Shelby*, 118 U. S. 425, 442. We have no difficulty whatsoever in determining that a decision that a criminal statute is unconstitutional must be fully retroactive so that a judgment thereunder shall not stand. See *Greene v. State*, 11

---

confession), *Jackson v. Denno, supra, Johnson v. New Jersey*, 384 U. S. 719, *Desist v. United States*, 394 U. S. 244 (footnote 15); *Barber v. Page*, 390 U. S. 719 (right to confrontation), *Berger v. California*, 393 U. S. 314; *Bruton v. United States*, 391 U. S. 123 (use of confession by co-defendant), *Roberts v. Russell*, 392 U. S. 293; *Witherspoon v. Illinois*, 391 U. S. 510 (disqualification of death penalty jurors), *id.*, footnote 22, p. 523; *In Re Winship*, 397 U. S. 358 (burden of proof in juvenile delinquency case), *V. v. City of New York*, 407 U. S. 203; *Waller v. Florida*, 397 U. S. 387 (double jeopardy-State prosecutions), *Robinson v. Neil*, 409 U. S. 505.

Compare application of holdings to cases the appeals of which were not final on date of decision. For example: *Mapp v. Ohio*, 367 U. S. 643 (unreasonable search and seizure), *Linkletter v. Walker*, 381 U. S. 618; *Griffin v. California*, 380 U. S. 609 (comment on defendant's failure to testify), *Tehan v. United States*, 382 U. S. 406.

Compare application of holdings to cases the trial of which begins after the date of decision. For example: *Miranda v. Arizona*, 384 U. S. 436 (confession procedure), *Johnson v. New Jersey*, 384 U. S. 719 and *Jenkins v. Delaware*, 395 U. S. 213; *Duncan v. Louisiana*, 391 U. S. 145 (right to jury trial), *DeStefano v. Woods*, 392 U. S. 631.

And compare: *United States v. Wade*, 388 U. S. 218 (right to counsel at lineup applies to lineups held after 6/12/67), *Stovall v. Denno, supra; Katz v. United States*, 389 U. S. 347 (electronic surveillance — applies only to electronic surveillance conducted after 12/18/67), *Desist v. United States*, 394 U. S. 244; *Lee v. Florida*, 392 U. S. 378 (use of wiretap evidence — applies to all trials in which the evidence has not been introduced by 6/17/68), *Fuller v. Alaska*, 393 U. S. 80; *Chimel v. California*, 395 U. S. 752 (restrictions on scope of search — not applicable to searches conducted before 3/31/70), *Williams v. United States*, 401 U. S. 646; *Coleman v. Alabama*, 399 U. S. 1 (representation at preliminary hearing — applies to preliminary hearings held after 6/22/70), *Adams v. Illinois*, 405 U. S. 278.

Md. App. 106, 112. We so hold with respect to our decision regarding Code, Art. 43, § 139.

## IV

As we have indicated, the immediate effect of our holdings is that the judgment against Ingel remains vacated. We deem it advisable, however, to discuss further the present status of the Maryland abortion statute, and particularly Art. 43, § 139 thereof. No person other than a licensed physician may perform an abortion and do the other acts set out in § 139 without incurring criminal responsibility. Without being criminally responsible, however, a licensed physician may perform an abortion, and do such other acts, without restraint as to reason, time, or place. The provisions of § 137 prescribing the conditions under which an abortion may and may not be performed, have no effect on § 139. Violations of the provisions of § 137 are not crimes and carry no criminal sanctions. As stated, *supra*, we express no opinion with regard to the constitutionality of § 137 because it is not before us.

Of course, the General Assembly may, if it chooses, enact legislation, within the dictates of *Roe* and *Doe*, regulating the performance of abortions and acts relating thereto, making violations of such regulations criminal offenses, and authorizing punishment upon conviction. But until such legislation is enacted and adopted, the criminal abortion law of this State must stand as tempered by the Supreme Court decisions.

*Order of 12 April 1973 of the Circuit Court for Prince George's County affirmed; costs to be paid by Prince George's County.*