

# In the Missouri Court of Appeals
# Eastern District
## DIVISION III

| | | |
|---|---|---|
| ISADORE GLOVER, | ) | No. ED101719 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Michael P. David |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | FILED: June 16, 2015 |

### Introduction

Isadore Glover ("Glover") appeals from the judgment of the motion court denying his Rule 24.035[1] motion for post-conviction relief without an evidentiary hearing. Glover pleaded guilty to three counts of burglary in the second degree, one count of attempted burglary in the second degree, two counts of felony stealing, and one count of property damage in the first degree. The trial count suspended imposition of Glover's sentence and placed him on probation for three years. After twice violating his probation, the trial court revoked probation and sentenced Glover to seven years' imprisonment for each count of burglary and stealing, four years' imprisonment for attempted burglary, and four years' imprisonment for property damage. The trial court ordered the sentences to run consecutively for a total sentence of forty-three years.

---

[1] All rule references are to Mo. R. Civ. P. (2014).

Glover subsequently filed a Rule 24.035 motion for post-conviction relief alleging that: (1) his sentence violates his right to protection from cruel and unusual punishment in that a sentence of forty-three years is grossly disproportionate to his crimes and shocks the conscience, and (2) his plea counsel was ineffective in misinforming and misleading him into believing that a sentence of forty-three years was not a realistic possibility. The motion court denied Glover's motion without an evidentiary hearing. Because the files and records of this case conclusively show that Glover is entitled to no relief, we affirm the judgment of the motion court.

## Factual and Procedural History

On March 25, 2010, the State of Missouri ("State") charged Glover with three counts of burglary in the second degree (Counts I, III, and V), one count of attempted burglary in the second degree (Count VII), two counts of felony stealing (Counts II and IV), and one count of property damage in the first degree (Count VI). The charges involved burglaries of three unoccupied houses and one attempted burglary in the City of St. Louis. Glover was eighteen years old at the time of the crimes.

Glover appeared before the plea court on April 26, 2010, to plead guilty to the charges. Glover acknowledged that there was no plea agreement with the State and that he wanted the plea court to determine the appropriate resolution of the case. The prosecutor recited the charges against Glover and advised the court of the facts he intended to prove had the case proceeded to trial. Glover admitted to committing burglary, attempted burglary, felony stealing, and property damage as described by the prosecutor. The prosecutor then recited the ranges of punishment for each charge, which was one day to seven years' imprisonment and/or up to a $5,000 fine for Counts I through V and one day to four years' imprisonment and/or up to a $5,000 fine for Counts VI and VII. The prosecutor noted that the sentences could run consecutively or concurrently. The plea court then inquired of Glover as follows:

2

| Court: | Do you understand those ranges of punishment? |
|---|---|
| Glover: | Yes, sir. |
| Court: | In other words, this case carries with it the potential for up to 83 years – no, 43 years in the Missouri Department of Corrections. Do you understand that? |
| Glover: | Yes, sir. |

The plea court then questioned Glover about the assistance he had received from counsel. Glover told the court that he had adequate opportunity to speak with counsel, that counsel had explained his legal rights and the consequences of pleading guilty, and that counsel had answered his questions and done what he wanted her to do. Glover denied that counsel had failed to do anything he wanted done. Glover said he had no criticisms or complaints about counsel and said that he was satisfied with her services. Glover also confirmed that he understood his rights attendant to trial and that he was giving up those rights by pleading guilty.

The plea court accepted Glover's guilty plea, finding that it was made voluntarily and intelligently with a full understanding of the charges and of the consequences of the plea. The plea court then ordered a Sentencing Assessment Report and set a sentencing hearing. Glover returned to court for sentencing on June 28, 2010. At that time, the plea court suspended imposition of Glover's sentence and placed him on probation for three years.

On December 15, 2011, the plea court entered an order suspending Glover's probation based on an alleged violation of the terms of probation.[2] An order reinstating probation was entered on October 5, 2012. A second order for probation suspension was entered on January 14, 2013, and on April 26, 2013, Glover appeared at a probation violation hearing. The plea court advised Glover that it was conducting the hearing because it had reason to believe that Glover had violated the conditions of his probation by being arrested and charged with two

---

[2] Glover was arrested for misdemeanor stealing, Section 570.030, on November 12, 2011.

3

counts of robbery in the second degree for robbing two banks. Glover waived a formal hearing and confessed to the probation violation. Counsel advised the court that Glover had been experimenting with drugs when the robbery occurred, that Glover pleaded guilty to the charge as soon as possible, and that he accepted the sentence handed down in that case.[3]

The plea court concluded that Glover violated his probation conditions and therefore revoked probation. The plea court then sentenced Glover to seven years' imprisonment on each count of Counts I through V and four years' imprisonment on Counts VI and VII, to run consecutively to each other, for a total sentence of forty-three years.[4]

Glover subsequently filed a *pro se* motion to vacate, set aside, or correct the judgment and sentence pursuant to Rule 24.035. Appointed counsel filed an amended motion alleging that: (1) Glover's sentence violates his right to protection from cruel and unusual punishment in that a sentence of forty-three years is grossly disproportionate to his crimes and shocks the conscience, and (2) Glover's plea counsel was ineffective in misinforming and misleading him into believing that a sentence of forty-three years was not a realistic possibility. The motion court denied Glover's motion without an evidentiary hearing. This appeal follows.

### Points on Appeal

Glover presents two points on appeal, each asserting that the motion court clearly erred in denying his motion for post-conviction relief without an evidentiary hearing because he pleaded facts that, if proven, would warrant relief. First, Glover avers that his forty-three year sentence violates his right to protection from cruel and unusual punishment because the sentence is grossly disproportionate to his crimes and shocks the conscience. Second, Glover argues that he was denied effective assistance of plea counsel in that plea counsel misinformed and misled

---

[3] Glover pleaded guilty to the two counts of robbery and was sentenced to ten years' imprisonment on each count, to run concurrently.

[4] The sentences were also ordered to run consecutively to the ten-year sentence previously imposed for the second-degree robbery conviction.

4

Glover into believing that a forty-three year sentence was not a realistic possibility and that no court would ever give an eighteen-year-old, first-time offender accused of class C and D felonies such a sentence.

## Standard of Review

Appellate review of a motion court's denial of a Rule 24.035 motion is limited to a determination of whether the findings and conclusions of the motion court were clearly erroneous. Rule 24.035; Day v. State, 770 S.W.2d 692, 695 (Mo. banc 1989). The motion court's findings and conclusions are presumptively correct and will be overturned only when this Court is left with a "definite and firm impression that a mistake has been made" after reviewing the entire record. Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010).

An evidentiary hearing is required if: (1) movant alleges facts, not conclusions, which, if true, would entitle movant to relief; (2) the factual allegations are not refuted by the record; and, (3) the matters complained of prejudice the movant. State v. Blankenship, 830 S.W.2d 1, 16 (Mo. banc 1992). An evidentiary hearing is not required where "the motion and the files and records of the case conclusively show that movant is entitled to no relief." Rule 29.15(h); Morrow v. State, 21 S.W.3d 819, 822 (Mo. banc 2000).

## Discussion

**I.      The consecutive effect of Glover's sentences does not constitute cruel and unusual punishment.**

Glover's first point on appeal requires us to determine whether his sentence violates the constitutional prohibition against cruel and unusual punishment contained in the Eighth Amendment. "[T]he Eighth Amendment guarantees individuals the right not to be subjected to excessive sanctions." Roper v. Simmons, 543 U.S. 551, 560 (2005). "Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for

5

crime should be graduated and proportioned to the offense." Graham v. Florida, 560 U.S. 48, 59 (2010). Proportionality "does not require strict proportionality between crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." Id. at 60 (internal quotations omitted).

In 1983, the U.S. Supreme Court culminated a series of opinions addressing the issue of cruel and unusual punishment under the Eighth Amendment with a pronouncement regarding the constitutionally acceptable proportionality of a sentence in Solem v. Helm. In Solem, a divided Court determined that a proportionality analysis under the Eighth Amendment analysis required (1) an examination of the gravity of the offense and the harshness of the penalty; (2) a comparison of the sentences imposed on other criminals in the same jurisdiction; and (3) a comparison of the sentences imposed for commission of the same crime in other jurisdictions. Solem v. Helm, 463 U.S. 277, 292 (1983). Eight years later, the Supreme Court departed from its pronouncement in Solem in Harmelin v. Michigan, stating:

> [W]e have addressed anew, and in greater detail, the question whether the Eighth Amendment contains a proportionality guarantee—with particular attention to the background of the Eighth Amendment (which Solem discussed in only two pages) and to the understanding of the Eighth Amendment before the end of the 19th century (which Solem discussed not at all). We conclude from this examination that Solem was simply wrong; the Eighth Amendment contains no proportionality guarantee.

Harmelin v. Michigan, 501 U.S. 957, 965 (1991) (internal citations omitted). In its final analysis, the Court in Harmelin substantially narrowed its holding in Solem and focused on the first Solem factor, i.e., an examination of the offense and the penalty.

The Missouri Supreme Court has recognized Harmelin as the appropriate analysis for cruel and unusual punishment challenges to a sentence. Accordingly, we follow the approach announced in Harmelin, "which clarified that reviewing courts are to determine, as a threshold matter, whether a sentence is 'grossly disproportionate.'" State v. Pribble, 285 S.W.3d 310,

6

314 (Mo. banc 2009). In making this determination, we are to consider the gravity of the offense and the harshness of the penalty. Id. If a sentence is not grossly disproportionate, then additional comparisons to sentences given to other defendants for the same or similar crimes are irrelevant. Id. "Gross disproportionality will be found only in 'exceedingly rare' and 'extreme' cases." State v. Denzmore, 436 S.W.3d 635, 644 (Mo. App. E.D. 2014) (citing Burnett v. State, 311 S.W. 3d 810, 814 (Mo. App. E.D. 2009)). "A sentence within the range prescribed by statute generally will not be found excessive, or grossly disproportionate, to the crime committed." Id. at 815.

It is well-established that the trial court retains discretion to order consecutive or concurrent sentences. Section 558.026; State v. Summers, 456 S.W.3d 441, 445 (Mo. App. W.D. 2014); State v. Mort, 321 S.W. 3d 471, 485 (Mo. App. S.D. 2010). Furthermore, Section 557.036.1 directs courts to "decide the extent or duration of sentence or other disposition to be imposed under all the circumstances, having regard to the nature and circumstances of the offense and the history and character of the defendant and render judgment accordingly." Section 557.036.1. Not only do we accord substantial deference to the legislature's determination of proper punishment, but "[w]hen the sentence imposed is within the range prescribed by statute, it cannot be judged excessive, *and the consecutive effect of the sentences does not constitute cruel and unusual punishment.*" State v. Mubarak, 163 S.W.3d 624, 631 (Mo. App. S.D.2005) (emphasis added).

Glover acknowledges that his sentence falls within the statutory range of punishment for the crimes committed. Nevertheless, Glover maintains that his sentence is excessive because he was only eighteen years old at the time he committed the crimes, he was a foster child who had recently "aged out" of the system, all of the offenses occurred at the same time, and his co-defendant received a sentence of only four years for the same crimes. Glover further argues

7

that the plea court did not properly consider his personal characteristics or the facts of the charged crimes and instead focused solely on the fact that Glover violated probation. Glover asks this Court to consider factors beyond those enunciated under Harmelin. Glover asks us to look beyond the gravity of the offense and the harshness of the penalty in deciding whether his sentence constitutes cruel and unusual punishment under the Eighth Amendment. This we will not do.

Even if we were to engage in an analysis broader than that required by Harmelin, we note that the plea court initially deferred sentencing by suspending imposition of Glover's sentence and placing Glover on probation. Had Glover successfully completed that probation, he would not have had a criminal conviction on his record in connection with this case. Although the record before us is not conclusive, it appears that Glover's age and circumstances were a determining factor in the plea court's decision to grant probation. After initially violating his probation for stealing, the plea court afforded Glover a second chance to complete probation. Despite these opportunities, Glover continued to break the law and violate his probation. Instead of adhering to the requirements of his probation, Glover's criminal activity while on probation appears to have escalated in severity as his second probation violation was not a minor offense -- Glover pleaded guilty to robbery in the second degree for robbing two banks.

Trial courts have very broad discretion in their sentencing function. State v. Collins, 290 S.W.3d 736, 746 (Mo. App. E.D. 2009). Among other evidence, in determining a sentence the trial court may properly consider evidence of a defendant's conduct that occurred subsequent to the crime being adjudicated. State v. Bowman, 337 S.W.3d 679, 691 (Mo. banc 2011). Here, the plea court properly considered Glover's continuing and escalating course of criminal conduct in determining that consecutive terms of imprisonment were appropriate. And, as previously stated, the consecutive effect of the sentences does not constitute cruel and unusual punishment.

8

Mubarak, 163 S.W.3d at 631. Because Glover failed to allege facts that warrant relief, the motion court did not clearly err in denying an evidentiary hearing on his claim of cruel and unusual punishment. Point One is denied.

## II.    Glover failed to allege the existence of any affirmative misrepresentation or misinformation by plea counsel that could render his plea involuntary.

Glover's second point on appeal concerns his claim of ineffective assistance of plea counsel. Glover contends that plea counsel was ineffective in misinforming and misleading him into believing that the maximum possible sentence – forty-three years – was not a realistic possibility and that no court would ever give an eighteen-year-old, first-time offender accused of class C and D felonies such a sentence. Glover further argues that counsel failed to inform him that if he violated probation, he might realistically receive a sentence of forty-three years.

When a defendant enters a guilty plea, the effectiveness of counsel becomes irrelevant except to the extent that it infringes upon the voluntariness and knowledge with which the guilty plea was made. Muhammad v. State, 367 S.W.3d 659, 661 (Mo. App. E.D. 2012). Thus, for Glover's ineffective assistance of counsel claim to succeed, he must show his plea of guilty was rendered involuntary by the inaction of counsel. See id.

Where plea counsel *affirmatively* misinforms his client about a consequence of pleading guilty, and the client relies upon the misrepresentation in deciding to enter his plea, the incorrect advice may affect the voluntariness of a plea. Savage v. State, 114 S.W.3d 455, 458 (Mo. App. E.D. 2003). By contrast, an errant prediction or advice of counsel does not render a plea involuntary, nor does an expectation of a lighter sentence than that actually received. Loudermilk v. State, 973 S.W.2d 551, 554 (Mo. App. E.D. 1998).

Here, Glover alleges that plea counsel affirmatively misinformed him about the consequences of pleading guilty when counsel advised Glover that a forty-three year sentence

9

was not "a realistic possibility" and that no court would ever give a first-time offender accused of class C and D felonies such a sentence. Despite Glover's characterization of plea counsel's advice, we find that Glover failed to allege the existence of any affirmative misrepresentation or misinformation by counsel that could render his plea involuntary. At best, plea counsel's alleged statement was a mere prediction of the sentence Glover would receive. Glover does not allege that plea counsel promised him any particular sentence. A mere prediction about sentencing cannot render a plea involuntary. See Loudermilk, 973 S.W.2d at 554.

Furthermore, Glover's claim that his plea was involuntary is absolutely refuted by the record. Glover was informed at the plea hearing of the minimum and maximum sentences for each of the charges to which he was pleading guilty. Glover was also specifically informed that the sentences could be ordered to run concurrently or consecutively and that Glover could be facing a sentence of forty-three years. At the time he entered his plea, Glover denied that any promises had been made to him about his sentence. Glover also expressed satisfaction with his plea counsel, and admitted that his plea was free and voluntary. While Glover may have believed that the maximum sentence was not a "realistic possibility," the record of the plea hearing shows that Glover was informed of all possible consequences before his plea was accepted. Accordingly, we cannot conclude that Glover's plea was involuntary. See Talley v. State, 146 S.W.3d 465, 468 (Mo. App. S.D. 2004).

Because Glover failed to allege facts, not refuted by the record, establishing that his plea was involuntary, the motion court did not clearly err in denying Glover's claim without an evidentiary hearing. Point Two is denied.

10

## Conclusion

The files and records of this case conclusively show that Glover is entitled to no relief. Accordingly, the motion court did not clearly err in denying his Rule 24.035 motion for post-conviction relief without an evidentiary hearing. The judgment of the motion court is affirmed.

_____
Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., Concurs
Gary M. Gaertner, Jr., Concurs

11