

# Missouri Court of Appeals

## Southern District

### Division One

CALEB Z. ECCHER, )
                 )
          Appellant, )
                 )     No. SD36821
vs. )
                 )     **Filed: August 25, 2021**
STATE OF MISSOURI, )
                 )
          Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF DADE COUNTY

Honorable Brandon B. Fisher, Judge

### <u>**AFFIRMED**</u>

Caleb Eccher shot at three people with a shotgun, seriously injuring two. He pleaded guilty to seven felonies and sought minimum sentences to be served concurrently. Instead, he essentially received 75 years. He claims that his sentence is grossly disproportionate to his crimes and that his trial counsel misled him into believing he would receive at most a 25-year sentence if he pleaded guilty. We affirm.

### **Background**

Eccher was driving to work when he noticed a vehicle driven by Donald Hembree, a former co-worker against whom Eccher bore a grudge. Eccher pursued Hembree's vehicle until it stopped. Eccher got out of his vehicle, took his already-loaded shotgun,

and shot at Hembree's vehicle six times. Hembree drove away, eventually stopping at his workplace. Eccher pursued Hembree, reloaded, and fired two more shots at Hembree as he fled into the workplace. The shots missed Hembree but struck a bystander, Krista Gerster. Eccher then went around to the other side of the building, where he saw Michael Galer kneeling on the ground. Eccher shot Galer in the neck.

Gerster was hospitalized for several days and would have shotgun pellets still embedded in her chest cavity years later. Galer thought he was going to die. Surgeons worked for 15 hours to keep him alive, removed bullet fragments from his chest and spine, and stabilized his neck with titanium rods. He spent 17 days in the ICU and eight months in a rehabilitation hospital. Eccher's attack left Galer a quadripalegic who will require constant care for the rest of his life.

Eccher was charged with seven felonies: two counts of first-degree assault with serious physical injuries (class A felonies), one count of attempted first-degree assault (class B felony), unlawful use of a weapon, and three counts of armed criminal action ("ACA"). The state offered to recommend an aggregate 90-year sentence if Eccher pleaded guilty, which Eccher rejected. Nonetheless, Eccher and his attorney supposed that a guilty plea would result in more lenient sentencing and concurrent sentences rather than consecutive. On the day his trial was scheduled to begin, Eccher entered an open guilty plea on all seven counts.

At the sentencing hearing, the court heard from the victims, their families, Eccher, his family, and others. Before pronouncing sentence, the court expressly stated it had considered the "very comprehensive," 17-page sentencing assessment report, Eccher's personal and family history, and Eccher's mental issues. Eccher was sentenced to 30 years for each class A felony assault and 15 years for the class B felony assault, with each

sentence to run consecutively. Eccher received 10 years for each ACA and 15 years for unlawful use of a weapon, all running concurrently with his other sentences. By application of § 558.019.3,[1] Eccher, who was 20 at the time he committed his crimes, will not be eligible for parole consideration until he is 70 years old.[2]

Eccher timely sought Rule 24.035[3] relief.[4] The motion court considered the record from the guilty plea hearing, during which Eccher had affirmed that he understood: (1) the court would assess punishment within the range provided by law, (2) the range of punishment for each offense, and (3) "if anyone has told you what they think the Court is going to do it's just their opinion, it's certainly not binding by the Court."[5] Eccher's trial counsel, who had practiced criminal defense law for 30 years, testified he had never promised a particular sentence, he had explained to Eccher what an open guilty plea was, and he had explained the range of punishment for each charged offense. Eccher testified that he had not been promised a particular sentence but he was "under the impression" he would get 25 or fewer years based on conversations with counsel. Eccher's motion was denied and this appeal followed.

## Point I – Guilty Plea

Eccher first contends his guilty plea was not entered knowingly, voluntarily, and intelligently because he relied on plea counsel's opinion that Eccher was likely to receive no more than 25 years if he pleaded guilty.

---

[1] All statutory references are to RSMo. 2016 unless otherwise indicated.
[2] Eccher must serve 85% of each of his sentences for each of the class A felonies, which would be 51 years. Even with credit for time served, that would put him at age 71 or older. Section 558.019.3 RSMo. caps the maximum age at 70 if at least 40% of time has been served.
[3] All rule references are to Missouri Court Rules (2018) unless otherwise indicated.
[4] We have reviewed the record and confirmed that both the original and amended motions were timely filed.
[5] Eccher's amended PCR motion included acknowledgements that he had received this information prior to pleading guilty.

We review the denial of a Rule 24.035 motion to determine whether the motion court's findings and conclusions were clearly erroneous. ***Glover v. State***, 477 S.W.3d 68, 73 (Mo.App. 2015). The findings and conclusions are presumptively correct and will be overturned only if we are left with a definite and firm impression a mistake has been made after reviewing the entire record. ***Id.***

The motion court found, "While Mr. Eccher may have hoped for a lesser sentence, he was well aware that any discussion of sentencing, prior to actually being sentenced, were mere opinions and that the Court would be the one giving the sentence." This finding is supported by the record as summarized above and as more fully set out in the appendix to this opinion. "'Neither a disappointed expectation of a lesser sentence, nor a mere prediction as to sentencing by counsel that proves incorrect, is sufficient to render a guilty plea involuntary.'" ***Robertson v. State***, 502 S.W.3d 32, 36 (Mo.App. 2016) (quoting ***Porter v. State***, 480 S.W.3d 455, 458 (Mo.App. 2016)).

Eccher's appellate counsel acknowledges the record but argues it's difficult to know whether Eccher, who has mild autism, truly understood he could receive a sentence greater than 25 years. This argument also is refuted by the record. At the guilty plea hearing, trial counsel indicated Eccher had no difficulty understanding the charges, no difficulty communicating with counsel, and could assist the defense if trial were necessary. Eccher's mental limitations were discussed and testimony was presented on that issue at the sentencing hearing. The same doctor who diagnosed Eccher with autism found Eccher was competent to stand trial because he understood the nature of the proceedings, did not have a psychotic disorder, knew what was real and what was not, and had the ability to cooperate in his defense. Point I is denied.

4

**Point II – Proportionality of Sentences**

Eccher next argues the length of his sentence is cruel, unusual, and grossly disproportionate to the crimes for which he was convicted.

"'Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense.'" ***Glover***, 477 S.W.3d at 74 (quoting ***Graham v. Florida,*** 560 U.S. 48, 59, (2010)). "Proportionality does not require strict proportionality between crime and sentence but rather forbids only extreme sentences that are grossly disproportionate to the crime." ***Id.*** (internal punctuation omitted). In determining whether a sentence is grossly disproportionate, we consider the gravity of the offense and the harshness of the penalty. ***Id.*** A finding of gross disproportionality only occurs in extreme and exceedingly rare cases. ***Id.***

We accord substantial deference to the legislature's determination of proper punishment. ***Id.*** at 75. Additionally, trial courts have broad discretion in their sentencing function, including but not limited to the discretion to order consecutive or concurrent sentences. ***Id.*** "'[W]hen the sentence imposed is within the range prescribed by statute, it cannot be judged excessive, **and the consecutive effect of the sentences does not constitute cruel and unusual punishment.'** *Id.* (quoting **State v. Mubarak**, 163 S.W.3d 624, 631 (Mo.App. 2005)) (emphasis added in ***Glover***).

Eccher emphasizes his youthfulness at the time of the crimes, his lack of prior convictions and low risk of recidivism, and reduced culpability due to his neuropsychological impairment and autism. At the sentencing hearing, a doctor opined that Eccher's offenses were emotionally-driven, and he could better manage his emotions in the future with proper medication and treatment.

The Eighth Amendment to the U.S. Constitution prohibits *juveniles* from being mandatorily sentenced to life without the possibility of parole without first considering whether such punishment is just and appropriate given the offender's age, the offender's development, and the circumstances of the offense. ***Miller v. Alabama***, 567 U.S. 460 (2012); ***State ex rel. Carr v. Wallace***, 527 S.W.3d 55 (Mo. banc 2017). Eccher acknowledges he was not a juvenile under Missouri law at the time of his offenses. However, he argues that the principles applied to juveniles in ***Miller*** and ***Carr*** should "require that no twenty-year-old receive an aggregate sentence that by all intents and purposes amounts to a sentence of life without parole." This argument fails for three reasons.

First, in contrast to the juvenile offenders in ***Miller*** and ***Carr***, Eccher was subjected to term-of-years sentences, not a mandatory sentence of life without the possibility of parole. Trial counsel could and did argue mitigating factors in support of sentences in the lower range of those provided by statute. Eccher does not argue and the record does not show that the sentencing court believed it was without discretion in sentencing[6] or that it failed to take mitigating evidence into consideration at sentencing. To the contrary, the sentencing court expressly stated it *did* take that evidence into account before determining the appropriate sentences.

Second, even if Eccher's sentence did constitute a *de facto* life sentence, which we do not find, it would not offend the Eighth Amendment. The state is not required to guarantee release of an offender during his natural life, even if he is a juvenile offender convicted of a nonhomicide crime. ***State v. Denzmore***, 436 S.W.3d 635, 645 (Mo.App.

---

[6] *Contrast* ***In re Allen v. Norman***, 570 S.W.3d 601, 604-05 (Mo.App. 2018) (mandatory sentence of life in prison without parole vacated because defendant was 16 when he committed murder and sentence was imposed without opportunity to consider ***Miller*** factors).

2014) (citing ***Graham v. Florida***, 560 U.S. 48, 75 (2010)).  Those who commit truly horrifying nonhomicide crimes may be irredeemable and thus deserving of incarceration for the duration of their lives.  ***Graham***, 560 U.S. at 75.  Eccher's eligibility for parole beginning at age 70 provides what the Eighth Amendment requires even for juvenile offenders:  a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." ***Id.***

Furthermore, the Supreme Court of Missouri has rejected similar policy arguments about developments in science and evolving standards of decency, etc., serving as a basis to extend juvenile law sentencing concepts to persons who commit crimes when they are 18 years of age or older. ***State v. Barnett***, 598 S.W.3d 127 (Mo. banc 2020).  Both the Supreme Court of the U.S. and the Supreme Court of Missouri have set 18 as the bright-line age limit for purposes of the considerations Eccher seeks. ***Id.*** at 133.  Missouri courts have applied this bright-line rule even to offenders who are mere days past their 18th birthday.  *See* ***State v. Bates***, 464 S.W.3d 257, 266-69 (Mo.App. 2015) (no plain error in imposing mandatory life sentence without possibility of parole for defendant who committed murder 11 days after his 18th birthday).

Intermediate appellate courts are error-correcting courts; the Supreme Court is a law-declaring court. ***Cork v. State***, 539 S.W.3d 920, 925 (Mo.App. 2017).  We are constitutionally-bound to follow the latest controlling decision from the Supreme Court on this issue. ***Harris v. State***, 562 S.W.3d 363, 366 (Mo.App. 2018).  As the Supreme Court stated in ***Barnett***, 598 S.W.3d at 133:  policy considerations are better addressed to the legislature, which has the authority to amend statutes to expand the definition of

"juvenile" to include older offenders.[7]

Eccher's sentence was within the range prescribed by statute and it appears that the sentencing court considered the mitigating factors he highlights on appeal. Although the aggregate total of Eccher's sentences is lengthy, "punishment is not cruel simply because it is severe." ***Mubarak,*** 163 S.W.3d at 631. Point II is denied.

## Conclusion

Eccher's mistaken expectation that he would receive concurrent sentences on the lower end of the statutory ranges does not render his guilty plea unknowing, involuntary, or unintelligent. None of his sentences, either individually or in the aggregate, are grossly disproportionate. The motion court's findings and conclusions are not clearly erroneous. Judgment affirmed.


JACK A. L. GOODMAN, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS

---

[7] Since the adoption of Missouri's Juvenile Court Act in 1919, juvenile delinquency jurisdiction applied only to persons who were alleged to have committed law violations prior to attaining the age of 17. *See **State v. Gregori***, 2 S.W.2d 747, 749 (Mo. banc 1928) ("[T]he Juvenile Court Act applies to children 16 years of age and under, that is, under the age of 17 years."); 1957 Mo. Laws 645 (extensive repeal and replacement of juvenile laws continued to define "child" as a person under 17 years of age); 1989 Mo. Laws 659-60 (§ 211.031 repealed and replaced but age for delinquency jurisdiction did not change). In 2018, an amendment to § 211.031.1(3) increased that age by one year, that is, to persons under the age of 18 years. 2018 Mo. Laws 1299. However, this expansion of juvenile court jurisdiction would not be effective until sufficiently funded. Section 211.438 RSMo. Cum. Supp. 2019, *repealed by* L. 2021, S.B. Nos. 53 & 60, sec. A. The Missouri legislature, with the governor's approval, recently appropriated more than $13.2 million to fund the 2018 "Raise the Age" amendment. H.B. 12, 101st Gen. Assemb., 1st Reg. Sess. (Mo. 2021).

## Appendix

The following exchanges occurred during the guilty plea hearing:

[The Court] Q. You understand that on a plea of guilty the Court will assess punishment?

[Eccher] A. Yes, Your Honor.

Q. You understand the punishment assessed by the Court on a plea of guilty may be more or less than a jury would have recommended?

A. Yes, sir.

. . . .

Q. You understand the punishment assessed by the Court may be anything within the range of punishment provided by law?

A. Yes, Your Honor.

Q. Have you been told or led to believe by any person, including law enforcement officer, prosecuting attorney, your attorney, friends or relatives, that if you entered a plea of guilty any certain punishment would be imposed?

A. No, sir.

Q. So here is the thing. The Court has made no indication to anybody what the Court will do in this case. Do you understand that?

A. Yes, sir.

Q. Lawyers haven't called me with a conference call or gotten any indication or said what if, Judge, this happened, what might you be inclined to do, they have - that's improper, and if they had, I would say, you know, I'm not going to give you any indication. You understand that there is no deal, open or behind the scenes, of any type?

A. Yes, sir.

Q. I guess this goes without saying, but do you understand if anyone has told you what they think the Court is going to do it's just their opinion, it's certainly not binding by the Court?

A. Yes, sir.

Q. You understand the Court could accept or reject any agreement or recommendation?

A. Yes, Your Honor.

Q. So the way this will work, if the Court accepts your guilty plea today is we will set it for a hearing on sentencing down the road, and the prosecutor will probably make some firm recommendation. Every once in awhile [sic] the prosecutor will say something more general, let their witnesses say some things, but sometimes they'll make a firm recommendation. Do you understand?

A. Yes, Your Honor.

Q. You know the Court is not bound by it?

A. (Nodding head)

Q. Also, your attorney, through you, or both of you may address the Court at that hearing and say, Judge, please do this, this is what we think is fair, please consider our position? You understand the Court is not bound by that? The Court is happy to hear it, but you understand the Court will have to make up its own mind?

A. Yes, Your Honor.

. . . .

Q. Are you satisfied with the advice given to you by your attorney?

A. Yes, Your Honor.

Q. Are you completely satisfied in every respect with the manner in which your attorney has represented you?

A. Yes, sir.

. . . .

Q. Let's talk about the range of punishment in these charges that you want to have the Court accept your plea of guilty to. There, as you have mentioned, are two A felonies. What do you understand the range of punishment of the A felonies to be?

A. Ten to thirty years, Your Honor.

. . . .

Q. (By the Court) Do you understand it's ten to thirty or life?

A. Yes, sir.

Q. There are three armed criminal action charges which are kind of an add on and have been for many, many years in Missouri. Additional offense for committing a crime with a weapon. What do you understand the range of punishment for those armed criminal action charges to be?

A. I believe it's listed as three to ninety-nine years, Your Honor.

Q. And I don't know if the statute still says not less than three years in the Department of Corrections. Is that what you understand?

A. Yes, sir.

Q. And then there are two B felonies, Count V and Count VII. What do you understand[] the range of punishment to be for the B felonies?

A. Five to fifteen, I believe.

Q. It's not really mentioned in this plea form, but I think it's necessary for the Court to address the issue of this first[-]degree assault and the statutory mandatory minimum percentage.

BY THE COURT: So, [counsel], why don't you address your understanding, whether you've talked to your client about that and considered that the desire to plead guilty.

BY [counsel]: Yes, Judge. We have discussed it many times, and he understands that the statutory minimum is eighty-five percent of whatever the sentence shall be. So whatever sentence imposed would be - if it was a ten[-]year sentence it would be eighty-five percent

of ten, if it was a thirty[-]year sentence it would be eighty-five percent of thirty years before he would be eligible for probation or parole.

. . . .

Q. (By the Court) Understanding all that, do you still want to continue on with your plea?

 A. Yes, Your Honor.